## UNITED STATES v. SILK.

### No. 3214.

Circuit Court of Appeals, Tenth Circuit.
April 19, 1946.

Lester L. Gibson, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., J. Louis Monarch and John W. Fisher, Sp. Assts. to Atty. Gen., and Randolph Carpenter, U. S. Atty., and Lester Luther, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for appellant.

Ralph F. Glenn, of Topeka, Kan. (Oscar Raines, Wendell B. Garlinghouse, and Warren W. Shaw, all of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action brought under Titles VIII and IX of the Social Security Act, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., and Subchapters A and C of Chapter 9 of the Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code, §§ 1400 et seq., 1600 et seq., for the recovery of employment taxes paid under protest. Plaintiff recovered, and the government has appealed. The only question presented by the appeal is whether the truck drivers and coal unloaders in question were employees of Albert Silk, doing business as Albert Silk Coal Company. The court's findings of fact are supported by substantial evidence and are therefore binding upon us. The following is a synopsis of the court's findings:

Appellee is a retail coal dealer in Topeka, Kansas, doing business as Albert Silk Coal Company. He has a large and extensive retail coal business. He does not own any trucks or any other vehicle used for the purpose of delivering the coal he sells. He contracts with individual owners of trucks for the delivery of coal at an agreed price per ton. The delivery trucks do not bear appellee's name, telephone number, or any descriptive advertising matter relating to his business. He owns a parcel of land on which are located his coal bins and tracks where coal cars are spotted for unloading, and two office buildings between which is a driveway to the coal scales. Appellee uses one of these buildings for his office and makes the other available as an assembly place for the truckers. The truckers have arranged a call list or board in the building in which they assemble, on which they enter their names in the order in which they are entitled to respond to a call for the delivery of coal. This was done by themselves for their own convenience. Appellee had nothing to do with the arrangement of the board. When a call comes into the office for coal, a ticket is made in duplicate, with all necessary data thereon. Appellee or his assistant then rings a bell which rings a bell in the building used by the truckers. The trucker whose name is at the top of the list on the board answers the bell and is offered the opportunity to make the delivery. If he desires to make the delivery he gets the order, but if for any reason he desires not to make the delivery, he so informs appellee and rejects the order. He is under no duty to make the delivery. In that case, the man next on the board is entitled to make the delivery if he so desires. After a delivery is made, a trucker is free to go home or return to the yard for other deliveries as he desires. According to the testimony appellee exercises no control over the truckers. They come and go as they please; they are not formally hired or discharged; they are paid for whatever coal they deliver. They are paid for what they haul as they request, sometimes after each load, sometimes at the end of the day, and sometimes at the end of the week. Frequently they haul coal for other dealers, haul grain, foodstuff, furniture, wood, rock, or any other material for other merchants or for private citizens of the community. This is done without interference or control by appellee over them in any way. The truckers report for work at such hours as they may wish, leave when they wish, and come and go independently of any rules or regulations or contracts

with appellee. If they do not want to haul coal, they do not report, or if they want to absent themselves for a week or two and then return, they do so. This in substance presents the relationship between appellee and the truckers.

In addition to the truckers, the status of another class of workers, the unloaders, is involved in the appeal. The unloaders are men who come to appellee's coal yard and unload coal from cars into the bins. If when they come there is coal to unload they are assigned a car and the bin into which they are to put the coal. They furnish their own tools and are paid an agreed price per ton. They are not regular employees. They come and go as they please. They likewise work for others at times, without the knowledge or consent of appellee. The only direction given to the unloaders is as to the car assigned to them and the bin into which they are required to put the coal.

 In order for the government to prevail, the trial court's findings of fact must compel the legal conclusion that the workers in question are employees within the purview of the Act. The Act in question is remedial in its scope and should be liberally construed to effectuate its remedial objectives. It may be conceded that the strict common law concept of employer and employee relationship is not the test for determining such relationship when it comes into question under the remedial provisions of the Act. In a sense, anyone who is engaged to do work for another for wages is an employee. He is employed to do work. But, in the same sense, an independent contractor likewise is employed or hired to do work. Article 205 of Regulation 90, promulgated under Title IX of the Social Security Act, defines employer and employee relationship as follows:

"However, the relationship between the individual who performs such services and the person for whom such services are rendered must, as to those services, be the legal relationship of employer and employee. * * * Generally the relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed. It is sufficient if he has the right to do so."

Regulation 91 of the Social Security Act, issued by the Bureau of Internal Revenue in 1936, and which was in effect during the time involved herein, contains substantially the same provisions relating to the employer and employee relationship as those contained in Regulation 90.

In Jones v. Goodson, 10 Cir., 121 F.2d 176, 179, we said that:

"In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor."

We also said that only a "reasonable measure of direction and control over method and means of performing the service is a constituent element of the relationship of master and servant."

 The relationship between appellee and the haulers and unloaders fails to measure up to any of the standards laid down in the Act, the regulations promulgated thereunder, or in our interpretation thereof in Jones v. Goodson, supra, and United States of America v. Wholesale Oil Co., Inc., 10 Cir., 154 F.2d 745. In a legal sense, there is no employment. In effect, all these laborers are itinerant workers. They come to work if, when, and where they please, and quit in like manner. They may work for one coal dealer today and report at another coal yard tomorrow, or they may haul grain, furniture or any other commodity for any individual or firm. But even while they work for appellee they are not subject to his control as to the method or manner in which they are to do their work. The undisputed evidence is that the only supervision or con-

trol ever exercised or that could be exercised over the haulers was to give them the sales ticket if they were willing to take it, and let them deliver the coal. They were free to choose any route in going to or returning. They were not required even to take the coal for delivery.

We think that the relationship between appellee and the unloaders is not materially different from that between him and the haulers. In response to a question on cross examination, appellee did testify that the unloaders did what his superintendent at the coal yard told them to do, but when considered in the light of all his testimony, all that this answer meant was that they unloaded the car assigned to them into the designated bin. Immediately after he gave the above answer, he was asked: "Wasn't he the yard foreman who directed them in their duties?", to which he replied: "Oh, I don't think so. They were told what to unload, where to unload it. He supervised."

The undisputed facts fail to establish such reasonable measure of direction and control over the method and means of performing the services performed by these workers as is necessary to establish a legal relationship of employer and employee between appellee and the workers in question.

The decision of the trial court is therefore affirmed.