**EWING v. VAUGHAN.**

No. 5731.

Circuit Court of Appeals
Fourth Circuit.

July 21, 1948.

Leonard B. Zeisler, Attorney, Federal Security Agency, of Washington, D. C. (H. G. Morison, Asst. Atty. Gen., Frank S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., R. Roy Rush, Asst. U. S. Atty., of Roanoke, Va., Edward H. Hickey, Sp. Asst. to Atty. Gen. and Hubert H. Margolies, Attorney, Department of Justice, of Washington, D. C., on the brief), for appellant.

Lyttelton Waddell, of Charlottesville, Va., for appellee.

Before PARKER and DOB_E, Circuit Judges, and PRETTYMAN, Associate Justice, United States Court of Appeals for the District of Columbia.[1]

PRETTYMAN, Associate Justice.

The dispute here is whether the appellee Vaughan was an employee of General Mills, Inc., within the meaning of Title II of the Social Security Act.[2] The statute which governs is Section 2(a) of an act passed by the Congress on June 14, 1948, over the President's veto.[3] This act added to Section 1101(a) (6) of the Social Security Act[4] a provision that the term "employee" shall not include an individual who is not an employee under the usual common-law rules applicable in determining the employer-employee relationship.[5] That this amendment was intended to resolve a dispute which had developed over the years as to the meaning of "employee" in the Social Security Act, is perfectly clear from the history of the controversy[6] and from the Committee reports.[7] It seems unnecessary to trace this controversy through all its judicial, administrative and legislative course.

The present proceeding was a civil action brought in the District Court by the appellee Vaughan to review a decision of the Appeals Council of the Social Security Administration, which had held that since the plaintiff was employed for wages of not less than $15 a month, deductions were required to be made from the benefits to which he and his wife were entitled. The deductions are those provided by Section 203(d) of the Act.[8] The District Court rendered summary judgment for the plaintiff, filing a careful and exhaustive memorandum opinion.

Prior to December 1, 1945, Vaughan was a flour salesman for General Mills. The company furnished him with an automobile and paid his traveling expenses and a flat salary per month, plus a bonus on sales in excess of certain specified amounts. The company had established rules providing for the retirement of employees at age sixty-five. Vaughan reached that age during the war and, under a special arrange-

[1] Sitting by special assignment.

[2] 49 Stat. 622 (1935), as amended, 42 U.S.C.A. § 401 et seq.

[3] Pub. L. No. 642, 80th Cong., 2d Sess.

[4] 49 Stat. 647 (1935), 42 U.S.C.A. § 1301(a) (6).

[5] Section 2(a) of Public Law No. 642 reads: "Section 1101(a) (6) of the Social Security Act is amended by inserting before the period at the end thereof the following: ', but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules'."

[6] Bartels v. Birmingham, 1947, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1584; United States v. Silk, 1947, 331 U.S. 704, 67 S. Ct. 1463, 91 L.Ed. 1757; United States v. Vogue, 4 Cir., 145 F.2d 609; and the many other subsequent cases in which those opinions are cited.

[7] H.R.Rep.No.1319, 80th Cong. 2d Sess. (1948); Sen.Rep.No.1255, 80th Cong., 2d Sess. (1948).

[8] 49 Stat. 623 (1935), 53 Stat. 1367 (1939), 42 U.S.C.A. § 403(d).

ment on account of the manpower shortage, was continued until his first anniversary after the war. Effective December 1, 1945, he was retired.

Thereupon he was given a brokerage contract in a specified territory, on a flat commission basis, 7½ cents per hundredweight of flour sold. He was not furnished an automobile, and his expenses were not paid. He was allowed to work as he wished, without directions from the company as to time or frequency, subject only to the right of the company to cancel the contract. He was at liberty to represent any other producer of flour or any other product. He was not required to conform to any fixed hours or to report at any particular time or place. Under the arrangement, he used his own stationery, paid for by him, with his own letterhead. He had no guaranteed minimum and was not allowed a drawing account or an advance of any kind against his commissions. He made no expense reports. He had no leave with pay or other vacation benefits and participated in no pension plan.

■ This case was decided by the Appeals Council of the Social Security Administration before the amendment of June 14, 1948, was enacted. The appellant's principal brief was filed before that amendment. It says: "The question at issue in the instant case is whether the plaintiff was, after December 1, 1945, dependent, as a matter of economic reality, upon the business of General Mills, Inc." The "economic reality" concept was the basis of the decision of the Appeals Council. That concept was developed from the Supreme Court cases to which we have referred.[9] It is perfectly evident from the language of the amendment of June 14, 1948, and from the Congressional reports that Congress reversed that view, retroactively to the date of original enactment.

■ It takes little consideration to conclude that under the brokerage arrangement which Vaughan had with General Mills after his retirement in December, 1945, the common-law relationship of employer and employee did not exist. The

conclusion is highlighted by the circumstance of Vaughan's retirement and the sharp difference between his relationship with the company as a salesman before that date and his relationship with it thereafter as a broker. It seems unnecessary to elaborate on the established "usual common-law rules applicable in determining the employer-employee relationship". The principal factor is the right of the employer to control the employee, not only as to the result but as to the details and means by which the work is done. The furnishing of tools and of a place to work is another characteristic factor. It is common knowledge that flour companies have long had two methods of selling, one by salesmen and the other by brokers, which methods are firmly established in custom and recognized as totally distinct one from the other.

The appellant argues in his reply brief, filed after the amendment of the Act, that Vaughan is an employee within the meaning of the usual common-law rules. But we are unable to find in the relationship established by this brokerage arrangement any of the characteristic elements of the common-law relationship of employer and employee.

■ Appellant also contends, in his reply brief, that the services performed by Vaughan after December 1, 1945, are within the saving clause of Section 2(b) (2) of the statute of June 14, 1948. That section provides that the amendment shall be retroactive to August 14, 1935, but "shall not have the effect of voiding any * * * wage credits with respect to services performed prior to the close of the first calendar quarter which begins after the date of the enactment of this Act in the case of individuals who have attained age sixty-five * * * and with respect to whom prior to the date of enactment of this Act wage credits were established which would not have been established had the amendment made by subsection (a) been in effect on and after August 14, 1935." It seems to us that the meaning of this language is shown by its obvious purpose. Social Security administrative officials had, since the original enactment of the Act, held persons

---

9 Supra note 5.

to be employees under concepts widely at variance with the common-law rules. Accordingly, "wage credits", representing percentages of the monthly wages of such persons, were entered in their accounts in the records of the Administration. Except for the saving clause, the retroactivity of the amendment of June 14, 1948, would have struck these "wage credits" from the accounts of such persons. The purpose and effect of the saving clause was to save to these people the wage credits thus built up, and so to entitle them to benefits.

Appellant says that the saving clause has a reverse effect in this particular case. In substance, his argument is that the saving clause perpetuates not only wage credits but also the individual's status as a wage-earner; that it does not merely preserve credits but also means that compensation received by these persons is wages for all purposes. He says, "It would be unreasonable to impute to Congress an intent to provide that a wage earner should be paid benefits under title II of the Social Security Act while he is performing services in covered employment." In the first place, we think such an imputation would be no more unreasonable than the intent, obvious upon the face of the amendatory statute, that one who, by virtue of the amendment, has never been an employee shall nevertheless have wage credits and be entitled to benefits by reason thereof. But, in the second place, there is no room in the clear language of this statute for any imputations of intent. The amendment is retroactive and thus makes non-employees of persons who have been held by the the Administration for many years to have been employees. Then the statute says that this retroactivity shall not affect "wage credits". That is all, nothing else. "Wage credits" enter into the computation of benefits,[10] but the deductions against benefits,[11] which this case concerns, are not premised upon past wage credits but upon current wages. Under the clear language of the act, this appellant retains his past wage credits but has no present wages; in fact, he has had no wages since he

retired. The situation thus created is no more of an anomaly than is the situation in respect to all persons who have years of wage credits, upon which they are entitled to benefits, but who are now, by this act, declared never to have been employees and never to have had any wages. That Congress deliberately created such a situation is clear upon the express declarations of the Committee reports.

We see no reason to go beyond the terms of this statute or to attempt to rewrite its terms.

Affirmed.

---

[10] Secs. 202(a) and 209(e) of the Social Security Act, 49 Stat. 623, 625 (1935), 53 Stat. 1363, 1376 (1939), 42 U.S.C.A. §§ 402(a), 409(e).

[11] Sec. 203(d) of the Act, supra note 7.