# BENSON v. SOCIAL SECURITY BOARD
## et al.
### No. 3703.

United States Court of Appeals
Tenth Circuit.
Jan. 31, 1949.

Roy C. Davis and Clair D. Hyter, both of Hutchinson, Kan., for appellant.

Malcolm Miller, Asst. U. S. Atty., of Lawrence, Kan. (Lester Luther, U. S. Atty., of Topeka, Kan., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

On January 5, 1943, appellant, Albin Axel Benson, filed an application for primary insurance benefits under the Social Security Act, 42 U.S.C.A. Chapter 7. The basis of this claim was services performed as an employee for the Nelson Manufacturing and Supply Company of Hutchinson, Kansas. His claim was allowed and monthly primary benefits were awarded him under Section 202(a) of the Act, 42 U.S.C.A. § 402(a). He was regularly awarded monthly benefits of $35.70 from January, 1943, to April, 1943.

After filing his application for such benefits, he entered into a contract in January, 1943, with the Hutchinson Foundry and Steel Company, a manufacturer of whole-

sale steel products and machinery. This contract was renewed in 1944 and 1945. There was no material difference in these contracts and reference will be made only to the first contract.

The contract with the Foundry provided that Benson was to solicit orders at his own expense for which he was to be paid on a commission basis. The Foundry agreed to ship to dealers, subject to approval by the Foundry, materials and supplies sold by Benson. It reserved the right to reject any order placed by Benson, without obligation. The contract recited that Benson was neither an agent nor employee of the Foundry. The contract was to continue for one year from date, and gave either party thereto the right to cancel upon thirty days' written notice. Benson also solicited orders for the Baker Manufacturing Company in 1943 and part of 1944, under a contract not materially different from that with the Foundry. In view of the similarity of these contracts, no further reference will be made to the Baker contract.

For a time the Foundry and Baker paid social security taxes covering Benson's commissions on theory of an employer-employee relationship. Later, however, the Foundry presented a claim for refund, and on September 28, 1943, the Treasury Department ruled that an employer-employee relationship did not exist between Benson and the Foundry and the claim for refund was allowed. The Bureau of Old Age and Survivors Insurance, however, ruled that an employer-employee relationship did exist. An appeal was taken to the Social Security Board. Upon the conclusion of the hearing, the Referee held that an employer-employee relationship existed within the meaning of Paragraph 209 (b) of the Act, 42 U.S.C.A. § 409(b). Benson sought, and was granted, a review of the ruling by the Appeals Council of the Social Security Administration. That Council agreed with the ruling of the Referee. On appeal, the United States District Court for Kansas affirmed the ruling that an employer-employee relationship was created and entered an appropriate judgment based on such ruling. This appeal followed.

There is no substantial disagreement on the facts. The undisputed evidence shows that the Foundry did not control Benson's territory, his time, nor did the Company furnish any leads. The company did restrict his sales to merchants. He could not sell at retail. The Foundry set the prices for the products which he sold. He solicited orders at his own expense. The Foundry provided no office space, required no reports, and Benson could, at will, engage in other work. He took orders on blanks furnished by the Foundry bearing its name; he was not required to report personally to the Foundry; he was compensated solely on a commission basis and was not guaranteed a minimum salary. While performing services for the Foundry, he was allowed to carry a line of merchandise of a competitor and was not required to give preference to the Foundry's goods. He was not eligible for bonuses, annual leave, vacation benefits, sick leave, nor allowed to participate in a pension plan. Concerning these facts, there is no dispute. The sole question in the case is do these facts spell out an employer-employee relationship?

Much judicial consideration has been given to the question of what constitutes an employee under this and similar remedial legislative acts. While the authorities are somewhat at variance in the test applied, it is, however, quite generally stated in all the authorities that the common-law test is the basis of determining an employer-employee relationship. Where the cases differ is as to the strictness or liberality with which the common-law elements of such a relationship are applied to the particular facts in the case. In the main, in all the cases before this court up to the case of United States v. Silk, 155 F.2d 356, we applied the common-law concept of an employer-employee relationship.[1]

While in the Silk case, supra, we recognized that the strict common-law concept of such a relationship might not be the test for the determination thereof under remedial statutes such as this, yet, in the main, in that case we applied the common-law concept.

On appeal of the Silk case to the Supreme Court, 331 U.S. 704, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757, the Supreme Court indicated that a somewhat more liberal rule should be employed in spelling out such a relationship under such remedial statutes as the one in question here. Thus the court, referring to its decision in National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, reiterated that the word "employee" was not a word of art and that it was to be construed "in the light of the mischief to be corrected and the end to be attained." The court in the light of the purposes of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. said that "employees" included workers who were such as a matter of economic reality. The "economic reality" tests were reasserted in the subsequent case of Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947, 172 A.L.R. 317. In the Silk case 331 U.S. at page 716, 67 S.Ct. at page 1469, 91 L.Ed. 1757, the court said:

"The Social Security Agency and the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision. No one is controlling nor is the list complete."

While in Woods v. Nicholas, 10 Cir., 163 F.2d 615, we recognized the more liberal interpretation laid down in the Silk and Bartels cases by the Supreme Court for the determination of such a relationship, yet, in the main, we applied the common-law elements of such a relationship to the problem presented there as is evidenced by citing our case of Jones v. Goodson, supra, and related cases.

After the decision by the Supreme Court in the Silk case, the Treasury Department revamped its Regulation, 12 Fed.Reg. 7966, using the test set out in the Silk case for determining the existence of an employer-employee relationship. Apparently this was not the concept of such a relationship that Congress had in mind in the passage of such remedial acts as the one involved here because thereafter on June 14, 1948,

---

[1] Jones v. Goodson, 10 Cir., 121 F.2d 176; United States v. Wholesale Oil Co., 10 Cir., 154 F.2d 745.

Congress enacted Public Law 642, 42 U.S. C.A. § 1301(a) (6). Section 1101(a) (6) of the Social Security Act was amended to read as follows:

"The term 'employee' includes an officer of a coporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the empoyer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

■ While it is not necessary to explore the full effect of this enactment in the determination of the existence of employer-employee relationships arising in the future, we think it can fairly be said that the intent of Congress was to say that in determining in a given case whether under the Social Security Act such a relationship, exists, the common-law elements of such a relationship, as recognized and applied by the courts generally at the time of the passage of the Act were the standard to be used. The passage of this Act will not solve this recurring problem in future cases that will come before the courts because, as always, the question will be—can it be said from all the facts in each case that such control is present as meets the test?

Although we did not rely upon the new congressional declaration of policy set out in the new enactment in King v. Southwestern Greyhound Lines, 10 Cir., 169 F. 2d 497, decided since the Amendment of June 14, 1948, we again applied the common-law concept of an employer-employee relationship.

■ It is urged that the facts in this case are indistinguishable from those in the King case. With this we cannot agree. The facts in the two cases are clearly different as a careful reading of the two cases will show. There is present here no such control as we found existed in the King case. It would only constitute repetition to again state the facts which prompt this statement. The only possible element of control that can be urged in this contract is the provision giving the Foundry the right to approve or reject orders and to cancel the relationship upon thirty days' notice. The right to cancel the King contract was one of the elements, with many others, which caused us to conclude that such control as would create the relationship was present there, but here it stands alone. The right to approve orders is a very reasonable and necessary one in such contracts and the provision for the cancellation of the contract is one found in innumerable contracts where an independent contractor relationship clearly exists. The right to cancel the contract by itself does not evidence such dominance and control of the method by which the work is to be performed as to create an employee relationship.

The Foundry lacked all control as to the details, method, manner and means by which Benson's work was to be done. All it could do if the results of his work were unsatisfactory was to terminate the contract. This alone was not sufficient to establish an employer-employee relationship.[2]

Reversed.

---

[2] The facts in Ewing v. Vaughn, 4 Cir., 169 F.2d 837, decided since the Amendment of June 14, 1948, are substantially the same as in this case. The Fourth Circuit likewise concluded that no employee-employee relationship existed.