### G. W. ALLEN & CO. v. HENSLEE.

### ARMISTEAD v. HENSLEE.

### HALL v. HENSLEE.

#### Nos. 973–975.

United States District Court
M. D. Tennessee, Nashville Division.

Oct. 6, 1949.

Jay G. Stephenson and J. G. Lackey, Jr., of Nashville, Tennessee, for plaintiff.

Ward Hudgins, United States Attorney, of Nashville, Tennessee, and Henry L. Spencer, Attorney, Tax Division, Department of Justice, Washington, D. C., for defendant.

DAVIES, District Judge.

### Findings and Conclusions

These consolidated causes came on for hearing before the Court on the 29th day of August, 1949.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiffs and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact

1. The defendant was, at the time the taxes complained of were paid and at the time these suits were instituted, the Collector of Internal Revenue of the United States of America for the District of Tennessee. The plaintiff, G. W. Allen & Company, is a Tennessee corporation with its principal office and place of business in Nashville, Tennessee. Marvin G. Hall is a resident of Nashville, Tennessee, doing business under the firm name of Marvin G. Hall & Company. E. C. Armistead is a

resident of Nashville, Tennessee, doing business under the firm name of E. C. Armistead & Company.

2. All of said plaintiffs are engaged in the general real estate business in the City of Nashville, Tennessee, having licenses as real estate agents or brokers; and as such they handle both the rental and sale of real estate as agents for the owners.

3. Without counting real estate salesmen, each of the plaintiffs has at all times had less than eight (8) employees, but each has at all times had associated with it a number of real estate salesmen which, if considered as employees, would make the total in excess of eight (8).

4. The relationship between each of the plaintiffs and their salesmen are substantially the same and differ only in the method and amount of compensation. The salesmen's status with the plaintiffs are evidenced only by oral contracts and are terminable at the will of either party. The plaintiffs agree with each salesman to furnish a desk, telephone and facilities for closing sales. The salesmen agree to use their best efforts to sell and do nothing that would vitiate their licenses. The salesmen agree to and do pay all of their selling expenses outside of the advertising of property for sale, they own their own cars and maintain them at their own expense, and they pay any entertainment expenses or other expenses incidental to the obtaining of customers. The salesmen obtain and have their own listings of real estate which listings belong to the individual salesmen and not to the plaintiffs; and if a salesman terminates his association with one of the plaintiffs, he takes his listings with him. If listings are given directly to one of the plaintiffs, they are divided among the salesmen associated with such plaintiff. Plaintiffs exercise no control over the method in which the salesmen carry out their work, nor do the plaintiffs have the right to do so; and the salesmen are required to make no reports to the plaintiffs. The plaintiffs do not require the salesmen to go through any prescribed training period or course, nor do they require them to produce any minimum volume of sales. The salesmen have no regular office hours or working hours, but they work such hours as they please and take such vacations and holidays as they see fit; and the plaintiffs do not direct the salesmen to call on any particular prospects nor to concentrate their time upon the sale of any particular property. The salesmen have the right to engage in other business and some salesmen have at times done so, particularly buying and selling real estate and the building of houses on their own account. The newspaper advertisements of property for sale bear both the name of the plaintiffs and the individual salesman who has the listing, although the plaintiffs sometimes advertise in their own name seeking listings of property. When any salesman negotiates a sale of real estate, he has a contract filled out and signed by the parties on forms provided by the plaintiffs, and these executed contracts are placed in the hands of the plaintiffs who make arrangements for the closing of the sale, such as ordering title examinations and preparations of papers. Any earnest money collected by the salesman at the time the sales contract is executed is turned over to the plaintiffs and is placed in an escrow account. When the plaintiffs have completed the preparation of papers for the closing of a sale, the salesman makes arrangements with the buyers and sellers to have them appear at the proper place for the closing of the sale, usually the offices of the plaintiffs. The sales are closed in the names of the plaintiffs and the real estate commission is then divided between the plaintiffs and the individual salesmen. The plaintiffs' portions are credited to income of the plaintiffs and the salesman's portion is either immediately paid to him or held until the end of the month, as desired by the salesman. None of the funds passing through the hands of the plaintiffs in connection with the closing sales is credited to income of the plaintiffs except their portion of the real estate commission. In the case of G. W. Allen & Company, the commission is split fifty per cent (50%) to G. W. Allen & Company and fifty per cent (50%) to the individual salesman. G. W. Allen & Company pays the cost of the advertising of property for sale and pays the cost of the salesmen's licenses. In the case of both E.

C. Armistead and Marvin G. Hall, the commission is split thirty-five per cent (35%) to the plaintiffs and sixty-five per cent (65%) to the individual salesmen; but these plaintiffs pay only thirty-five per cent (35%) of the cost of advertising of property for sale and thirty-five per cent (35%) of the cost of the salesmen's licenses.

5. The Internal Revenue Department held that the salesmen were employees of the plaintiffs, making each of said plaintiffs have in excess of eight (8) employees, and therefore levied taxes upon them under the Federal Unemployment Tax Act, Title 26 U.S.C.A. § 1600 et seq., which taxes were paid by the plaintiffs on following dates and in following amounts:

| Year | Tax Paid | Date of Payment |
|------|----------|-----------------|
| | G. W. Allen & Company | |
| 1944 | $ 741.38 | January 25, 1945 |
| 1945 | 757.44 | January 10, 1946 |
| 1946 | 924.66 | January 17, 1947 |
| 1947 | 886.52 | January 1948 |
| | Marvin G. Hall | |
| 1946 | $1478.10 | January 31, 1947 |
| 1947 | 1399.87 | December 14, 1948 |
| | E. C. Armistead | |
| 1946 | $ 865.10 | January 31, 1947 |
| 1947 | 920.08 | December 14, 1948 |

6. The plaintiffs each filed claims for refund of all said taxes within less than four (4) years from date of payment of same. All of said claims for refund were denied by the Commissioner of Internal Revenue, who duly notified the plaintiffs thereof, by registered letter, and these suits for refund of said taxes with interest were instituted within less than two (2) years from the denial of said claims.

### Conclusions of Law

■ 1. These suits arise under Internal Revenue Laws of the United States and specifically under the Federal Unemployment Tax Act, Title 26 U.S.C.A. § 1600 et seq., and therefore, this Court has jurisdiction thereof.

2. That the Unemployment Tax Act, Title 26 U.S.C.A. § 1600 et seq., provides only for tax on employers of more than eight (8) employees and further provides in Section 1607 that the term "employee"

does not include any individual who, under the common law rules applicable in determining employee-employer relationship, has the status of an independent contract.

■ 3. No relationship of employee-employer exists between the plaintiffs and their salesmen, but the salesmen have the status of independent contractors.

4. Each of the plaintiffs is entitled to a refund of all taxes sued for, plus interest from the date of payment as provided by law.

Judgment will be entered accordingly.