**RAMBIN v. EWING, Federal Security Adm'r.**

**Civ. A. No. 3102.**

United States District Court
W. D. Louisiana, Shreveport Division.

Aug. 5, 1952.

under Sections 205(g) and 205(c) (8) of the Social Security Act, 42 U.S.C.A. §§ 405(g), 405(c) (8), to review a decision by the Appeals 'Council of the Federal Security Agency that plaintiff was not entitled to have her wage record revised to include the commissions paid her by Avon Products, Inc. (hereafter called Avon), for her sales of its products during the period from January, 1941, through April, 1947. The basis of the decision by the Appeals Council is that no employer-employee relationship existed between plaintiff and Avon and that, therefore, plaintiff was not engaged in employment covered by the Social Security Act.

Plaintiff first asserted that her wage records should be revised to include her commissions from Avon in a letter, dated June 8, 1945, to the Bureau of Old-Age and Survivors Insurance, in Shreveport, Louisiana. Up to that date, plaintiff had had no Social Security number; plaintiff then applied for and was issued a Social Security number. Avon had not paid Social Security taxes for plaintiff or made deductions from her commissions. It claims that the plaintiff was not within the Social Security Act. In her letter of June 8, 1945, plaintiff requested that Avon not be contacted since she did not want to injure her relations with the company.

Plaintiff ceased to represent Avon in April, 1947. On March 21, 1949, plaintiff was informed by the Federal Security Agency that while representing Avon she had been an independent contractor rather than an employee and that, therefore, her wage record could not be revised since she had not been within the coverage of the Social Security Act. On August 11, 1949, plaintiff requested that her claim be reconsidered and on August 17, 1949, plaintiff was informed by the Federal Security Agency that upon reconsideration it reaffirmed its original decision that plaintiff's services for Avon were not covered by the Social Security Act.

Plaintiff then filed a request for a hearing and on October 20, 1949, a hearing was had before a Referee of the Social Security Administration. In addition to plaintiff, two witnesses testified: Mrs. Gladys Lee Town-

---

John Gallagher, Shreveport, La., for plaintiff.

Holmes Baldridge, Asst. Atty. Gen., William J. Fleniken, U. S. Atty., and Leland H. Coltharp, Jr., Asst. U. S. Atty., Shreveport, La., for defendant.

PORTERIE, District Judge.

This is a suit against Oscar R. Ewing, Federal Security Administrator, brought

send, who was then a sales representative for Avon, and Mrs. Annie G. Graves, who formerly had been a sales representative for Avon. At this hearing, also, Exhibits A through Q were introduced into the record.

In his decision, which was rendered on January 31, 1950, the Referee held that an employer-employee relationship existed between plaintiff and Avon, and that, therefore, plaintiff was entitled to have her wage records revised so as to include the commissions plaintiff received in her sales for Avon. Shortly thereafter, plaintiff was notified in a letter dated March 1, 1950, that the Appeals Council of the Federal Security Agency had decided on its own motion to review the Referee's decision. In another letter dated March 13, 1950, plaintiff was advised that the Appeals Council had decided that before reaching a decision it should have before it the testimony of one or more persons who could speak officially for Avon and that a supplemental hearing would be had before the Referee to take the testimony of Mrs. Lillie Saybrook, the city manager for Avon when plaintiff was a sales representative, or Mrs. Olive Weaver, the present city manager. Plaintiff was further advised that the Appeals Council was requesting the Referee to obtain from plaintiff whatever evidence she had as to the amount of her commissions, since at the first hearing plaintiff had questioned the accuracy of one of the exhibits showing her commissions. This action by the Appeals Council was taken pursuant to regulations (20 C.F.R. §§ 403.710 (b) and 403.710(c)) issued under authority of Sections 205(a) and 1102 of the Social Security Act, 42 U.S.C.A. §§ 405(a), 1302.

The second hearing was had before the Referee on April 25, 1950. In addition to plaintiff, Mrs. Gladys Lee Townsend (who was no longer a sales representative for Avon), and Mrs. Annie G. Graves, all of whom testified at the first hearing, the following witnesses testified: Mrs. Lillie Saybrook, who was city manager for Avon in Shreveport, Louisiana, at the same time plaintiff was a sales representative for Avon in Shreveport; Mrs. Olive Weaver, who was then the city manager in Shreve-port for Avon; and, Mrs. C. M. Bartholomew, who formerly had been a sales representative for Avon. The remaining exhibits (R through AA) were also introduced at this second hearing.

Upon the basis of the evidence adduced at the first and second hearings, the Appeals Council issued its decision on August 25, 1950, that there had not been an employer-employee relationship between plaintiff and Avon and that, therefore, plaintiff was not entitled to have her wage record revised since she had not been within the coverage of the Social Security Act. Plaintiff thereupon instituted the instant suit to review this decision.

At the second hearing, plaintiff agreed that her commissions for the period in question (January, 1941, through April 1947) totaled $4,736.87. Accordingly, the issue now before this Court is the correctness of the administrative decision that plaintiff was not covered by the Social Security Act when she represented Avon and was therefore not entitled to have her wage record revised to include her commissions of $4,736.87.

The term "wages" was originally defined in the Social Security Act to include "all remuneration for employment," 49 Stat. 620, 625, 42 U.S.C.A. § 409. The term "employment" in its turn was originally defined to include, with exceptions here immaterial, "any service, of whatever nature, performed * * * by an employee for his employer," 49 Stat. 620, 625, 42 U.S.C.A. § 410. It was further provided by the Social Security Act that: "The term 'employee' includes an officer of a corporation," 49 Stat. 620, 647, 42 U.S.C.A. § 410.

The United States Supreme Court in two decisions rendered in 1947 rejected the common-law test for determining who was an employee under the Social Security Act; instead, it was held that "in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service." Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947, 172 A.L.R. 317; United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757.

The response by Congress to these decisions by the Supreme Court was swift. On June 14, 1948, Congress passed a statute over the President's veto amending the definition of "employee" to expressly incorporate the common-law test of an employee. The definition of "employee" was amended to read as follows:

"The term 'employee' includes an officer of a corporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules." 62 Stat. 438, 26 U.S.C.A. § 1607 (I).

The 1948 amendment of the definition of "employee" was, with exceptions here immaterial, explicitly made retroactive to August 14, 1935, the date of the passage of the original Social Security Act (See Sec. 2(b), 62 Stat. 438). This unambiguous provision that the 1948 amendment is retroactive to August 14, 1935, has been given express judicial recognition. Ewing v. Vaughan, 4 Cir, 169 F.2d 837. Accordingly, the determinative issue here is whether under common-law tests plaintiff was an employee of Avon.

The common-law relationship of employer and employee did not exist in the present case unless plaintiff was subject to the control or right to control by Avon, with respect to her conduct in the performance of her services. Restatement of Agency, § 220. "[A]n employee is subject to the will and control of the employer—not only as to what should be done, but how it should be done * * *." Yearwood v. United States, D.C., 55 F. Supp. 295, 300; Shreveport Laundries, Inc. v. United States, D.C., 84 F.Supp. 435.

The evidence is completely bare of any indication that Avon actually controlled plaintiff's physical conduct in the performance of her services. Therefore the question is whether Avon retained the right to control plaintiff's conduct and to answer this question resort must be had to all the circumstances of the relationship.

Exhibit M is a copy of the contract entered into between Avon and its sales representatives. Avon supplied their sales representatives with the following written advice:

"Advice to Sales Representatives

"From a study of sales methods of our most successful representatives over a number of years, the following simple suggestions which we heartily recommend to your attention have evolved:

"1. Before commencing operations, thoroughly prepare yourself for Avon and perfection selling.

"2. Attach customers' orders signed by the customer to the shipping orders you send into the company.

"3. Keep a careful record of names and addresses of all new customers. The company furnishes a book which you will find convenient for such purposes.

"4. Comply strictly with all the terms of your Avon Sales Representative's Agreement. Our business so conducted is interstate commerce. Strict compliance with the terms of the contract stated insures your immunity to any license requirement or tax.

"5. It is the interest of both the sales representative and the company to create a regular customer demand. This customer demand is dependent to a large extent on the service given a customer. Prompt and timely deliveries to customers and a prompt remittance to the company of all monies due it will insure good service. *You are free to lay out your own work in your manner, to arrange your own trips, hours of work, and all other details.* The interest of the company is that customers should have a regular and steady opportunity to buy Avon and perfection merchandise." (Emphasis ours.)

The uncontradicted evidence establishes the following as to the relationship between plaintiff and Avon. Plaintiff sold cosmetics of Avon from house to house on a com-

mission basis. When plaintiff became a sales representative, she paid $5.00 for a sales kit and other supplies. Plaintiff sent copies of her orders to Avon's office in Kansas City Missouri. Avon then shipped the goods to plaintiff on a consignment basis. Plaintiff was supposed to remit to Avon, within twenty days of receipt of the goods, 60% of the price at which the goods sold; and, in the event plaintiff failed to do so, Avon would thenceforth send goods C. O. D. until it had collected the amount owing to it. The goods were billed to plaintiff and it was her responsibility to pay Avon for the goods whether or not the customer received and paid for the goods.

Plaintiff's only remuneration was her commission of 40%, plus $5 extra for every $250 of sales. Plaintiff was not guaranteed any minimum compensation and she was not allowed a drawing account or advance of any kind against unearned commissions. Plaintiff paid all of her traveling expenses and she even had to pay the postage for sending orders to Avon.

The only office which Avon maintained in Shreveport was an office for the city manager. Plaintiff worked from her own home and she was never furnished any leads. The relationship between plaintiff and Avon was terminable at will.

The evidence is in dispute as to the following: (1) whether plaintiff was required to restrict her sales activities to a certain designated territory and, if so, whether she was required to canvass that territory at specified intervals; (2) whether plaintiff was required to meet any minimum quota of sales and/or to work any minimum number of hours; and, (3) whether she was required to attend the weekly sales meetings in the city manager's office and whether, at such meetings, she was required to submit weekly reports.

■ The Appeals Council in its decision found that there were no such requirements and a review of the record makes it abundantly clear that there is sufficient evidence to support these findings. Thus, as to the first requirement in dispute, Mrs. Saybrook testified that territories were only suggested to the sales representatives and that, in fact, the sales representatives did not stay in any particular territory but sold all over Shreveport. Mrs. Weaver also testified that the territories were only suggested to the sales representatives and she did not possess the authority to terminate the services of any sales representatives who did not stay in a particular territory. Further, Mrs. Weaver unequivocally denied that there was any requirement that the sales representatives canvass any territory within any specified time.

The second requirement in dispute is whether plaintiff was required to procure a minimum amount of sales and/or to work a minimum number of hours. Mrs. Saybrook testified at least twice that the sales representatives were not required to procure any minimum amount of business or to work any minimum number of hours. Mrs. Weaver also testified that the sales representatives were not required to work any minimum amount of time. Moreover, Mrs. Graves and Mrs. Bartholomew testified that they represented Avon on a part-time basis and that they were not required to produce a minimum amount of business. Mrs. Townsend also testified that she represented Avon on a part-time basis.

The third and final requirement in dispute is whether plaintiff was required to attend the weekly sales meetings held in the city manager's office and whether, at such meetings, she was required to submit weekly reports. Mrs. Saybrook testified that attendance at the weekly sales meetings was optional and Mrs. Saybrook further testified unqualifiedly that the submission of the weekly reports was not required. In fact, Mrs. Saybrook testified that she could not terminate the services of a sales representative for failure to submit weekly reports. Mrs. Weaver also testified that neither attendance at the weekly meetings nor submission of the weekly reports was required.

■ Under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), the findings of the Appeals Council are conclusive if supported by "substantial evidence". Substantial evidence means "enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is

one of fact for the jury." National Labor Relations Board v. Columbian E. & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. It is readily apparent that the findings of the Appeals Council as to the disputed requirements are supported by substantial evidence, and, accordingly, those findings are conclusive here.

Moreover, even assuming that the findings of the Appeals Council as to one or more of the disputed requirements are not supported by substantial evidence, there still did not exist between Avon and plaintiff the common-law relationship of employer and employee. A long line of decisions holds that commission sales representatives are not employees within the coverage of the Social Security Act. The underlying circumstances of the relationship between the sales representatives and company often vary widely from case to case, but commission sales representatives have uniformly been held to be outside the Social Security Act.

The following decisions hold that commission sales representatives are not employees who are covered by the Social Security Act. Dimmitt-Rickhoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 179 F.2d 882 (commission real estate salesman); Brady v. Periodical Publishers' Service Bureau, Inc., 6 Cir., 173 F.2d 776 (commission solicitors and collectors for company engaged in business of obtaining magazine subscriptions); Benson. v. Social Security Board, 10 Cir., 172 F.2d 682 (commission solicitor of orders for foundry); Ewing v. Vaughan, 4 Cir., 169 F.2d 837 (commission salesmen of flour); Henry Broderick, Inc. v. Squire, 9 Cir., 163 F.2d 980 (commission real estate brokers for a real estate corporation); McGowan v. Lazeroff, 2 Cir., 148 F.2d 512 (house-to-house commission salesmen); G. W. Allen & Co. v. Henslee, D.C., 86 F.Supp. 295 (commission real estate salesmen); Gause-Ware Service Ins. Co. v. Thomas, D.C., 76 F.Supp. 626 (commission insurance agents); De-Raef Corporation v. United States, 70 F.Supp. 264, 108 Ct.Cl. 255 (commission salesmen); Cannon Valley Milling Co. v. United States, D.C., 59 F.Supp. 785 (brokers who sold milling company's flour and feed on commission basis); Tractor Training Service v. United States, I.C.C.H., Unemployment Insurance Reporter, Par. 9387 (commission salesmen of correspondence courses in the operation and maintenance of tractors and related equipment).

The 1950 amendment to the Social Security Act makes it clear that in the view of Congress commission sales representatives, such as plaintiff, are not considered to be employees under the common-law test and are thus outside the Social Security Act. The 1950 amendment 64 Stat. 477, 492, et seq. changed the definition of employee in the Social Security Act to read as follows:

"(k) The term 'employee' means—

"(1) any officer of a corporation; or

"(2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or

"(3) any individual (other than an individual who is an employee under paragraph (1) or (2) of this sub-section) who performs services for remuneration for any person—

"(A) as an agent-driver or commission-driver engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages (other than milk), or laundry or dry-cleaning services, for his principal;

"(B) as a full-time life insurance salesman;

"(C) as a home worker performing work, according to specifications furnished by the person for whom the services are performed, on materials or goods furnished by such person which are required to be returned to such person or a person designated by him, if the performance of such services is subject to licensing requirements under the laws of the State in which such services are performed; or

"(D) as a traveling or city salesman, other than as an agent-driver or commission-driver, engaged upon a full-time basis in the solicitation on behalf of, and the transmission to, his

274

principal (except for side-line sales activities on behalf of some other person) of orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments for merchandise for resale or supplies for use in their business operations; if the contract of service contemplates that substantially all of such services are to be performed personally by such individual; except that an individual shall not be included in the term 'employee' under the provisions of this paragraph if such individual has a substantial investment in facilities used in connection with the performance of such services (other than in facilities for transportation), or if the services are in the nature of a single transaction not part of a continuing relationship with the person for whom the services are performed." 42 U.S.C.A. § 410(k).

Congress was of the view that a special amendment was necessary to bring within the coverage of the Social Security Act full-time life insurance salesmen and traveling or city salesmen. For the legislative history, see, generally, 1950 U.S. Code Cong. Service, pp. 3482, 3493-96 (discussion of definition of "employee", Conference Report No. 2771, 81st Cong., 2d Sess.). Plaintiff is excluded from the above definition of employee since she does not sell to the group of purchasers enumerated in Section 410(k) (3) (D). It is thus apparent that Congress does not consider commission sales representatives to be within the Social Security Act, and the 1950 amendment bringing under the Act certain categories of salesmen is inapplicable to plaintiff.

We have read the note of evidence of the hearing (159 pages); have examined all the numerous forms used in the business; and, have considered the contract between the parties, etc.

Thus, we have closely sensed the relation. Moreover, we have lived some years and have observed instances of the peculiar type of business involved.

There is not here the relation of employer-employee. The plaintiff-solicitor is too free; there is no itemized control by the alleged employer. There is an ultimate object—the sale of the product on a commission basis—and the manner of attainment of that object, however, is totally left to the individual solicitor.

There may be one good solicitor like the plaintiff here in a hundred that try; this is the proof that the application and the character of the solicitor are the main qualifications; she is absolutely the mistress of these characteristics for success in this business.

We are of the view that the motion for a summary judgment is good. Let the judgment be presented in due time.