**SCHMIDT et ux. v. EWING.**
**Civ. No. 4347.**

United States District Court,
M. D. Pennsylvania.

Nov. 18, 1952.

506

W. Hamlin Neely, Harrisburg, Pa., for plaintiffs.

Arthur A. Maguire, U. S. Atty., Scranton, Pa., for defendant.

WATSON, Chief Judge.

This is an action brought pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for a review of the decision of the Referee denying plaintiffs' applications for old-age insurance benefits and wife's insurance benefits.[1] The defendant has filed a motion for summary judgment, and a similar motion was filed on behalf of the plaintiffs. The cross-motions are filed on the ground that there is no genuine issue as to any material fact, and that the question before the Court is one of law.

The material facts as found by the Referee are as follows: John P. Schmidt, hereafter referred to as the claimant, is a licensed veterinarian, identified officially by the Department of Agriculture, Commonwealth of Pennsylvania, as an "Approved Meat Inspector" and representative of that Department. He wears a badge issued by the Department and bearing the designation "Officer Number 341". His duties as such an inspector are performed under the following provisions of Pennsylvania law:

"The department (of agriculture), in enforcing the provisions of this act * * * may also appoint duly qualified veterinarians licensed by this Commonwealth, other than regular employes, to act as approved agents of the Commonwealth in the examination of animals, meats, or meat-food products and poultry, in any approved abattoir or community sale under the provisions of this section. Such agents shall receive no compensation from the Commonwealth.

\* \* \* \* \* \*

"The appointment, qualifications, powers, and duties of each such agent shall be governed by the provisions of this act, and by such rules and regulations for the enforcement of this act as may be adopted and promulgated by the department. Each such agent may be dismissed at any time by the department." Title 31 P.S. § 471.

In 1945, the Mid-Valley Beef Company, Olyphant, Pennsylvania hereafter referred to as the Company, requested the Department of Agriculture to assign an approved meat inspector. The Department directed the claimant to contact the Company, and make arrangements for pay and reporting to work. The services began in December, 1945, and continued without interruption until January 27, 1951. Thereafter, claimant performed the same services for the Spungin Abattoir, Inc. at Harrisburg, Pennsylvania, where he is still engaged.

The Company was engaged in wholesale distribution of meat, and the services performed by the claimant comprised the ante-mortem and post-mortem inspections of cattle, calves and sheep at the Company's abattoir. In addition to inspecting live stock before and after slaughtering, claimant generally supervised the sanitation of the premises. He worked daily at the plant, starting about three-quarters of an hour in advance of the 7:00 a. m. plant starting time so as not to delay production, and he quit ordinarily at 4:30 p. m. He was on call, if needed, at other times. The length of his day was governed by the starting time of the slaughtering crew and the number of animals to be inspected. He was carried on the payroll of the Company at an agreed annual rate and was paid weekly. Though listed in the telephone directory as a veterinarian, claimant did not work for any one else during the period in question or conduct an independent practice as a veterinarian.

No other meat inspector performed services at the plant while claimant worked there. When absent, the Department of Agriculture sent a traveling inspector to

---

1. A request for a review of the Referee's decision was denied by the Appeals Council of the Social Security Administration, and the Referee's decision, therefore, became the final decision of the Federal Security Administrator in this case.

take claimant's place temporarily. If such an inspector could not be spared by the Department, claimant himself provided and paid an approved substitute.

Claimant and the Company agreed that there was no supervision by the Company of the actual performance of claimant's work, because the detail and methods of the performance of the service were prescribed by rules and regulations issued by the Department, and the services were subject to the supervision of a Department traveling inspector who made his reports independently to the Department. Claimant reported weekly to the Department the number of animals slaughtered (by species), the number passed by inspection, the number condemned and the nature of disqualifications. Such reports were made on departmental forms, they were sent directly to the Department, the Company had no responsibility or authority concerning the timeliness, accuracy, or content of such reports, and did not see the reports before they were filed. In the event claimant's services proved unsatisfactory to the Company, the Company could only request his removal by the Department and the assignment of another inspector. Under the Pennsylvania statute referred to above, 31 P.S. § 471, the power to dismiss lay with the Department.

Claimant testified that his services for the Spungin Abattoir, Inc. after 1950, and up to the time of the hearing, were the same as those performed for the Mid-Valley Beef Company. The differing facts are that the Spungin Abattoir included claimant in its Group Insurance Plan for its employees and that it deducts an old-age benefits contribution from his remuneration.

Based on these facts, the Referee found that an employer-employee relationship did not exist between claimant and the Mid-Valley Beef Company or the Spungin Abattoir, Inc. The Referee further found that since claimant's remuneration for such services was not "wages" within the meaning of the Act, and that since he did not acquire the required quarters of coverage from any other source before he filed application for benefits, he was not a fully insured individual.

It is clear that under the section of the Social Security Act providing for an appeal from an administrative body,[2] the Referee's findings of fact must be sustained if the court finds that they are supported by substantial evidence, and this Court does so find in this case. However, the question of how far a court is bound to accept the inferences and conclusions drawn by the Referee from the facts is not clearly defined. The Court of Appeals for the Third Circuit in O'Leary v. Social Security Board, 153 F.2d 704, reserved the question. The Court of Appeals for the Second Circuit in Walker v. Altmeyer, 137 F.2d 531, held that it was the judgment of the administrative body as to an employer-employee relationship rather than that of the court which the statute made effective, provided that judgment was based upon conclusions reasonably reached upon due consideration of all relevant issues presented after parties in interest had been given a fair hearing or a fair opportunity to be heard upon the facts and the applicable law. The Court of Appeals for the Ninth Circuit, in United States v. La Lone, 152 F.2d 43, also held that the same finality which applies to the administrative board's findings of fact also extends to the board's inferences and conclusions from the evidence if a substantial basis is found for them. But see Carroll v. Social Security Board, 7 Cir., 1942, 128 F.2d 876.

Under the rule announced in the Altmeyer and La Lone cases above, the Court would have to affirm the Referee's decision because there is a substantial basis for his conclusion that an employer-employee relationship did not exist. This Court does not rest its decision solely on the fact that there is a substantial basis for the Referee's conclusion; the Court finds that it is in complete agreement with the Referee that

---

2. 42 U.S.C.A. § 405(g) "* * * The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive * * *."

an employer-employee relationship did not exist.

Throughout the history of the Social Security Act much judicial consideration has been given to the question as to what constitutes an employee under this Act. It was generally held that the common-law test was the basis of determining an employer-employee relationship. Benson v. Social Security Board, 10 Cir., 1949, 172 F.2d 682. In the case of United States v. Silk, 1947, 331 U.S. 704, 67. S.Ct. 1463, 91 L.Ed. 1757, the Supreme Court indicated that a somewhat more liberal rule should be employed in spelling out such a relationship under a remedial statute, such as the Social Security Act. The Supreme Court held that the same rule should be applied to the application of Social Security legislation as was applied to the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., in National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, wherein the Court said that "employees" included workers who were such as a matter of economic reality. Apparently this was not the concept that Congress had in mind, because thereafter on June 14, 1948, Congress enacted P.L. 642, 62 Stat. 438, 42 U.S.C.A. § 1301, amending the statutory definition of who are employees, and restricted it to individuals who are employees "under the usual common law rules". This amended definition was given a retroactive effect back to August 14, 1935.. The new section of the Act, 42 U.S.C.A. § 410(k)(2), effective January 1, 1951 again defines an employee to include "any individual who, under the usual common law rules applicable. in determining the employer-employee relationship, has the status of an employee". .

The real question, therefore, is whether claimant was an employee under the usual common-law rules and the applicable Regulations of the Federal Security Administrator, particularly that regulation appearing in Title 20 C.F.R. 403.804, entitled "Who are employees". It reads as follows: .

"(a) Every individual is an employee if the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

"(b) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee.

\* \* \* \* \* \*

"(f) The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists."

█ Under both the common-law and the Regulation above, the important question to decide is whether or not the Company controlled or directed, or had the right to control and direct, not only the result of the work but also the means and manner of the performance thereof. Vaughan v. Warner, 3 Cir., 1946, 157 F.2d 26; Benson v. Social Security Board, 10 Cir., 1949, 172 F.2d 682, supra.

█ The record shows that the Company did not and could not legally direct or control the claimant as to the result to be accomplished or as to the means and manner in which he performed his functions as inspector. For example, the Company

had no right to tell the inspector what animals he should pass or condemn. If the Company was dissatisfied with the decision of the inspector, its only recourse was to appeal to the inspector's superior.

As pointed out by the Referee, it is true that certain factors are present in the relationship which may indicate an employer-employee relationship, such as substantially fixed hours of work, payment for the services by the payroll method, and performance of all of the services on the employer's premises. However, these factors are overcome by the lack of control and direction over the claimant. Another important indicia of the employer-employee relationship mentioned in the Regulation above, and in numerous cases, is the right of the alleged employer to discharge the alleged employee. In this case, the Company had no right to discharge claimant.

It is the opinion of this Court that an employer-employee relationship did not exist between the claimant and either of the companies.

■ Nor can claimant be given credit under old-age and survivor's insurance on the ground that he performed his services as an "independent contractor". If he were an independent contractor and therefore self-employed, he could not be given any credit with respect to his income derived prior to 1951 because self-employment income before that date was not "covered employment" for purposes of old-age and survivors insurance. As to self-employment income since 1951, claimant was deriving his income from the practice of his profession as a veterinarian and, as such, the income would be excluded by subsection 211(c)(5) of the Social Security Act, 42 U.S.C.A. § 411(c)(5).

Having found that John P. Schmidt was not entitled to old-age insurance benefits, the claim of Maude L. Schmidt for wife's insurance benefits must also fail.

The Court finds that defendant is entitled to judgment as a matter of law. An appropriate order granting defendant's motion for summary judgment, and denying plaintiffs' motion for summary judgment will be filed herewith.