A. J. MEYER & COMPANY, Appellant, v. UNEMPLOYMENT COMPENSATION. COMMISSION OF MISSOURI, and WILLIAM F. METZ.—152 S. W. (2d) 184.

Division One, April 18, 1941.

Rehearing Denied, June 12, 1941.

148

*Robert L. Maul* for appellant.

*Harry G. Waltner, Jr.,* and *Edward D. Summers* for respondents.

*E. R. Morrison* and *Delos C. Johns amici curiae; Morrison, Nugent Berger, Byers & Johns* of counsel.

*D. Calhoun Jones* for St. Louis Real Estate Exchange, *amicus curiae.*

BRADLEY, C.—January 2, 1939, William F. Metz filed with the Unemployment Compensation Commission a claim for unemployment compensation. It was Metz's contention that as a real estate salesman he had been *in the employment* of A. J. Meyer & Company, a St. Louis real estate firm, within the meaning of our Unemployment Compensation Act, Laws 1937, p. 574 et seq., Sec. 9421 et seq., R. S. 1939, and was entitled to such compensation. Meyer & Company resisted the claim; contended that Metz, as to it, was an independent contractor; that the relation of employer and employee did not exist, and that such being so, Metz had not been in its employment within the meaning of the act. The Unemployment Compensation Commission held that Metz's activities, as real estate salesman, was *employment* under the act. Meyer & Company filed petition in the circuit court for review. The circuit court affirmed the ruling of the commission, and Meyer & Company appealed. We shall hereinafter refer to Meyer & Company as plaintiff, to the Unemployment Compensation Commission as the commission, and to Metz as claimant.

Our jurisdiction is not challenged, but it is our duty to determine such question when it occurs, whether raised or not. [Murphy et al. v. Hurlbut Undertaking & Embalming Company, 346 Mo. 405, 142 S. W. (2d) 449, l. c. 450, and cases there cited.] The individual members of the commission were not named as parties in the petition to the circuit court for review, but the individual members as such answered. Jurisdiction of the appeal is in the Supreme Court because a state officer (members of the commission) is a party. [Sec. 12, Art. 6 of the Constitution; Murphy et al. v. Hurlbut Undertaking & Embalming Company, supra.]

Plaintiff contends, as stated, that the relation of employer and employee did not exist between it and Metz, and that absent such relation Metz was not in its employment within the meaning of our Unemployment Compensation Act. Also, plaintiff contends that the Unemployment Compensation Law is unconstitutional because in violation of Sec. 3, Art. 10 of the Constitution, which section provides, among other things, that "taxes may be levied and collected for public purposes only." On the other hand, the commission contends that even though the relation of employer and employee did not exist, Metz's activities were, under the facts, *employment* under the act, and the commission defends the constitutionality of the act. Before stating the facts we make reference to some pertinent law.

Subsection (i) of Sec. 11, Laws 1937, p. 594, now subsection (i) of Sec. 9432, R. S. 1939, among other things, provides that in any judicial review of a finding of the commission "the findings of the commission as to the facts, if supported by competent evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."

Subsection (i) of Sec. 11 is similar, in effect, to that part of Sec. 3732, R. S. 1939, 12 Ann. Stat., sec. 3342, p. 8275, defining the scope of appellate jurisdiction of workmen's compensation appeals. The rule, on appeal, in workmen's compensation cases is: "Findings of fact made by the commission, if sustained by sufficient competent evidence, are, absent fraud, conclusive on appeal, and in determining the sufficiency of the evidence upon which the commission based its finding we consider the evidence in the light most favorable to the finding and disregard evidence which might support a different finding than made." [Adams v. Continental Life Ins. Co. et al., 340 Mo. 417, 101 S. W. (2d) 75, l. c. 77, and cases there cited.] We think it clear that, as to the facts, the same rule that obtains in a workmen's compensation case appeal, should obtain in an unemployment compensation case appeal.

Subsection (g) of Sec. 3 of the act, Laws 1937, p. 575, amended 1939, Laws 1939, p. 888, now subsection (g) of Sec. 9423, R. S. 1939, defines *employing unit* as follows:

"'Employing unit' means any individual or type of organization including any partnership, association (etc.), . . . which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this state. . . ."

Subsection (h) of Sec. 3, as amended, now subsection (h) of Sec. 9423, R. S. 1939, defines employer as follows:

"'Employer' means: (1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had

in employment, eight or more individuals irrespective of whether the same individuals are or were employed in each such day. . . ."

Subsection (i) of Sec. 3, as amended, now subsection (i) of Sec. 9423, R. S. 1939, defines *employment* as follows: " 'Employment.' (1) Subject to the other provisions of this subsection, employment means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied." Then follow subdivisions 2, 3 and 4 of subsection (i) which subdivisions deal with the *locale* of service. And then comes *the bone of contention*, subdivision (5) of subsection (i) which is as follows:

"(5) Services performed by an individual for wages shall be deemed to be employment subject to this law unless and until it is shown to the satisfaction of the commission that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; *and* (b) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; *and* (c) such individual is customarily engaged in an independently established trade, occupation, profession or business" (italics ours).

Subdivision (6) of subsection (i) sets out the kinds of service not to be under the act. Subsection (n) of Sec. 3 defines *wages* as "all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash."

The facts. Plaintiff was engaged in the real estate business in St. Louis, and its income was derived from the commissions received on real estate sales, leases, etc. It had about 15 salesmen, one of whom was claimant. The commission was divided as follows: 10% to the salesman who procured the listing, 45% to the salesman who found the purchaser, and 45% to the plaintiff. Claimant became one of plaintiff's real estate salesmen in the spring of 1936, and so continued until May 18, 1938, and on January 2, 1939, as stated, he filed with the commission a claim for unemployment compensation. January 13, 1939, plaintiff acknowledged receipt of notice of the claim and filed with the commission what may be termed an answer which alleged that Metz was, as to plaintiff, an independent contractor.

Harry Forward was plaintiff's sales manager. There was no written contract. Forward advised claimant "on certain things," but did not insist that these be done. Claimant had no drawing account; was given no expense money; was not furnished a car. Salesmen prepared their own ads, but plaintiff paid for the advertising and paid for printing business cards of salesmen; furnished blank earnest money contracts and listing agreements, and these were made in the name of plaintiff. And plaintiff furnished a common office to its

salesmen, and stenographic and telephone service at the office. There were no specified hours to work, but plaintiff expected to hear from a salesman every day. No set number of calls or contracts were required. If a salesman received a list of leads from the company some kind of report was expected, and if it were advertised that a certain piece of property would be available on Sunday for inspection the salesman designated was expected to be present.

When a salesman secured a listing, such was reported to the office and a record of all listings was kept in the office, and was available to all the salesmen. When a salesman got a sale ready to close it was closed by plaintiff at its office. Salesmen were not under bond; did no collecting; each worked "purely as a salesman;" The operating territory was St. Louis, and St. Louis County, but salesmen were not restricted to any particular area in the territory. Salesmen were not required to keep a record of their activities, but for their own benefit kept such record. Sales meetings were held occasionally; salesmen attendance was not required, but was sometimes requested.

Plaintiff did not carry any workmen's compensation insurance on its salesmen. They were not prohibited from doing other kinds of work on the side, and some of them did other work along with selling real estate. One sold furniture and ice boxes; another sold insurance. Plaintiff had no control over the salesmen as to how they went about their work; was interested only in "the result of their work." The salesmen worked up their own clientele; had the right to deal with other real estate brokers. Plaintiff's witness, Evertz, who had charge of closing the sales at the office, testified that in the time, 20 months, he had been with plaintiff no salesman had been discharged. He said that when a salesman quit he just picked up and walked out. It was understood, however, that either party could terminate the relation upon notice.

The commission, in effect, concedes that plaintiff would not be liable for a tort of claimant committed while discharging the work of a real estate salesman. And we think such is true, and that as to plaintiff, Metz was an independent contractor. [See Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S. W. (2d) 58; Snowwhite v. Metropolitan Life Ins. Co. et al., 344 Mo. 705, 127 S. W. (2d) 718; Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S. W. (2d) 252.]

The commission, however, contends that the statutory definition of *employment,* in subsection (i) of Sec. 3 "is more inclusive than the master and servant relation," and would include the service performed by claimant. As stated, our Unemployment Compensation Act was enacted in 1937, and it followed generally a *form,* called the *draft bill,* prepared and distributed (January, 1937) by the federal social security board. Subsection (i) (1), and (5) (a), (b), (c) of Sec. 3 of our act, are taken *verbatim* from the draft bill form.

Respecting forms prepared and sent out by the federal social security board, it is stated in the brief of *amici curiae* that "there were three editions of these drafts. Each edition contained two forms; one the so-called pool type and the other the employer reserve type. The definitions were the same in each type bill of the same edition. The first edition was dated January, 1936; the second, September, 1936, and the last January, 1937. The Missouri Legislature, meeting in 1937, followed the January, 1937, form and this is the form which for the first time included paragraph 5 (our (5) (a), (b), (c) of subsection (i) of Sec. 3) in the definition of 'employment.'" Counsel (*amici curiae*) then say that the social security board did not originate these provisions, but that such is an adaptation of a similar provision in the Wisconsin act.

As given in Wisconsin Bridge & Iron Co. v. Ramsay, 233 Wis. 467, 290 N. W. 199, l. c. 202, the Wisconsin statute was in substance as follows: Employment means any service performed by an individual for pay under any contract of service for pay or contract of hire whether such individual's contract was directly made with and paid by the employer or through a person in his employ; and each individual thus engaged to perform services for pay shall be treated as in an employment, unless and until the employer has satisfied the commission (1) that such individual was free from control or direction in the performance of his contract of service; *and* (2) that such individual's work was performed outside of all the employer's places of business; *and* (3) that such individual was customarily engaged in an independently established trade, business or occupation. It will be observed that our statute ((5) (a), (b), (c)) is quite similar to the Wisconsin statute. It was held in the Wisconsin case that an independent contractor was not an *employee* within the meaning of the Wisconsin act (more of the Wisconsin case, infra).

In the following cases the unemployment compensation statute defining *employer* and *employment*, is similar to ours, and in each of these cases it was held that an independent contractor was not under the Unemployment Compensation Law. We indicate briefly the kind of service performed. See Washington Recorder Publishing Co. v. Ernst et al. (Dept. 2), 199 Wash. 176, 91 Pac. (2d) 718, 124 A. L. R. 667, distributor of newspapers; Fuller Brush Company v. Industrial Commission (Utah), 104 Pac. (2d) 201, selling brushes (more of this case infra); Hill Hotel Company v. Kinney et al. (Neb.), 295 N. W. 397, furnishing music, as a member of a band, for a hotel; Unemployment Compensation Commission of Wyoming v. Mathews (Wyo.), 111 Pac. (2d) 111, furnishing music for a bar and cafe; Moorman Mfg. Co. v. Iowa Unemployment Compensation et al. (Iowa), 296 N. W. 791, a salesman selling on commission certain products to farmers (Iowa has only (a) of our (a), (b), (c) of subdivision (5) of subsection (i) of Sec. 3).

In the following cases an independent contractor was held not to be under the law, but the statutes involved were not so similar to ours as were the statutes in the cases last above referred to. See Texas Company v. Wheeless (Miss.), 187 So. 880, wholesale distributors of petroleum products; the statute did not contain our (5) (a), (b), (c) or anything similar; Barnes et al. v. Indian Refining Co. et al. (Ky.), 134 S. W. (2d) 620, handling petroleum products on consignment; statute specifically required that the relation of employer and employee exist; Northwestern Life Ins. Co. v. Tone et al., 125 Conn. 483, 4 Atl. (2d) 640, soliciting life insurance; the statute specifically required that the relation of employer and employee exist.

In Robert C. Buel & Co. v. Danaher et al. (Conn.), 18 Atl. (2d) 697, a security salesman representing the plaintiff broker was held to be in employment under the Connecticut act, but it was also held that the relation of employer and employee existed between the salesman and the broker.

In the following cases, under the respective facts, the service rendered was held to be employment under the Unemployment Compensation Law, and in each instance the law contained provisions like or similar to our (5) (a), (b), (c) of Sec. 3. See Industrial Commission v. Northwestern Mut. Life Ins. Co., 103 Colo. 550, 88 Pac. (2d) 560, soliciting life insurance agents, who also collected premiums, serviced policies, etc.; Unemployment Compensation Commission v. Jefferson Standard Life Ins. Co., 215 N. C. 479, 2 S. E. (2d) 584, soliciting life insurance agents ''governed strictly by instructions given them;'' McKinley et al. v. R. L. Payne & Son Lmbr. Co. (Ark.), 143 S. W. (2d) 38, involved the work of a lumber stacker, ''an ignorant colored man,'' over whose work the lumber company, the alleged employer, had control; McDermott v. State et al., 196 Wash. 261, 82 Pac. (2d) 568, ''where barbers were operating under so-called oral lease agreements with owner of shop under which agreements barbers were to pay owner 40 per cent of the gross receipts for use of chairs, but where owner of shop as proprietor paid shares to barbers and held himself out to be owner of shop and barbers were not free from owner's control and were not engaged in independent business'' (headnote, 82 Pac. (2d) 568); Schomp et al. v. Fuller Brush Company (N. J.), 12 Atl. (2d) 702, selling brushes. It would seem that the New Jersey Fuller Brush case is in conflict with the Utah Fuller Brush case, supra.

As appears, supra, the substance of subdivision (5) (a), (b), (c) of our statute came from the Wisconsin statute. In the Wisconsin Bridge & Iron Company case, supra, the Wisconsin Supreme Court, in speaking of the Wisconsin statute said (290 N. W. l. c. 202, 204): ''Statutes are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed. . . . It

would seem that if the Legislature in enacting Sec. 108.02, Stats. 1937, had intended to change the ordinary and commonly understood meaning of the words 'employer' and 'employee' they would have used language expressly so declaring. By Sec. 370.01, Stats., words in statutes are to be 'construed and understood according to the common and approved usage of the language.' ''

In the Washington Recorder Publishing Company case, supra, it was stated (Dept. 2), 91 Pac. (2d) 1. c. 727, that ''in drafting the statute the legislators attempted to codify the common law. They intended that the common law test of employment relationship should likewise be the test under the Unemployment Compensation Act.'' In the Hill Hotel case, supra, the Supreme Court of Nebraska (295 N. W. 1. c. 398) said that ''while there is a diversity of views among the courts on this subject and the opinions are not always unanimous, the weight of authority is that legislatures in enacting unemployment compensation statutes did not intend to depart from the common law definition of 'independent contractor.' ''

Counsel for plaintiff in the present case say that the McDermott case (82 Pac. (2d) 568), supra, by Dept. 1 of the Supreme Court of Washington, and the Washington Recorder Publishing Company case, supra, by Dept. 2 of said court, are in conflict. We do not think that there is any conflict. Each case was determined upon its own facts.

The *Title* of our Unemployment Compensation Act is of importance, we think, in the solution of the question in hand. Under our Constitution the Title of a statute is necessarily a part thereof, and is to be considered in construction. [Dart v. Bagley et al., 110 Mo. 42, 1. c. 51, 19 S. W. 311; Glaser v. Rothschild, 221 Mo. 180, 1. c. 212, 120 S. W. 1.] The Title begins: ''An act to provide for the establishment and administration of a system of *Unemployment* Compensation . . .'' (Italics ours.) *Unemployment* compensation either *clearly* expressed the *subject* of the act or it did not. If it did not so express the *subject*, then Sec. 28 of Art. 4 of the Constitution was violated. If it did clearly express the subject, were not the words to so express, used in ''their plain or ordinary and usual sense,'' as provided in Sec. 655, R. S. 1939, infra? The ordinary and usual meaning of *unemployment* means ''state of being not employed; lack of employment.'' The verb *employ* means ''to make use of the services of; to give employment to; . . . to afford employment,'' and is a synonym of *hire*. Employer means ''one who employs, esp. for wages or salary as an employer of workmen.'' The term *employee* means ''one employed by another; one who works for wages or salary in the service of an employer.'' [Webster's New International Dictionary.] ''When associated with the idea of service, the word 'employ' means to hire or make use of the services of . . . and implies control by the employer over the means and manner of doing the work.'' [Stein v.

Battenfield Oil & Grease Company, 327 Mo. 804, 39 S. W. (2d) 345, l. c. 348.]

Section 649 et seq., R. S. 1939 (Art. 2, Chap. 4) are on the subject of the construction of statutes. Section 655 referred to, supra, provides that unless plainly repugnant to the intent of the Legislature, or of the context, "words and phrases (of a statute) shall be taken in their plain or ordinary and usual sense." We do not think that it would be plainly repugnant to the *intent* of the Legislature or of the *context* to say that the terms, *unemployment, employment, employer,* and *employee* are used in our Unemployment Compensation Act "in their plain or ordinary and usual sense," and so considered, these terms would be in harmony ■ with the definition of employment as given in the act.

The term *employee* is not defined in the act, but where used its meaning, we think, is unmistakable. Section 4 of the act, Sec. 9424, R. S. 1939, provides that the commission shall consist of three members and that "at least one member of said commission shall be a person who, on account of his previous vocation, employment or affiliation shall be classified as a representative of employers, and one member of said commission shall be a person who, on account of his previous employment, vocation or affiliation, shall be classified as a representative of *employees* (italics ours), and one member, who by reason of his previous employment, vocation or affiliation, will be regarded as impartial, and would represent the public."

Subsection (e) of Sec. 5, Sec. 9426, R. S. 1939, provides for an advisory council of 7 members to be appointed by the Governor, and it is provided that two members of the council "shall be persons who, because of their vocations, employment or affiliations, shall be classed as representatives of employers; two shall be persons who, because of their vocations, employment or affiliations, shall be classed as representatives of *employees*; the remaining three appointees shall be persons whose training and experience qualify them to deal with the problems of unemployment compensation, particularly with respect to the legal, accounting, acturial, and economic aspects of unemployment compensation." Subdivision 3 of said subsection (e) provides that the advisory council "may request . . . any employer or *employee* subject to this act to appear before it and to testify relative to the functioning of the act and to other relevant matters." (Italics ours.)

Subsection (d) of Sec. 11, Sec. 9432, R. S. 1939, provides, among other things, as follows: "To hear and decide disputed claims, the commission shall appoint one or more impartial appeal tribunals consisting in each case of either a salaried examiner, selected in accordance with Section 9426 (d) or a body consisting of three members, one of whom shall be a salaried examiner, who shall serve as chairman,

one of whom shall be a representative of employers and the other of whom shall be a representative of *employees*.'' (Italics ours.)

It is quite clear, we think, that the terms *employer* and *employee* as used in the sections quoted last above, are used in their ordinary and usual sense.

■ Section 907 of Title IX of the Federal Social Security Act, 42 U. S. C. A., Sec. 907, defines *employer, wages,* and *employment* as follows: ''(a) The term 'employer' does not include any person unless on each of some twenty days during the taxable year, each day being in a different calendar week, the total number of individuals who were in his employ for some portion of the day (whether or not at the same moment of time) was eight or more; (b) the term 'wages' means all remuneration for employment, including the cash value of all remunerations paid in any medium other than cash; (c) the term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except—,'' then follow the exceptions such as agricultural labor, domestic service in private home, etc.

It appears in the present case that plaintiff took up with the federal treasury department the question of whether it (plaintiff) was liable for the excise tax under the Federal Social Security Act on one of its salesmen, Fritz, who worked under the same kind of contract as did claimant Metz. Plaintiff was advised ''on the basis of the information presented'' that Fritz was not an employee under the Federal Social Security Act. Our Unemployment Compensation Act is not circumscribed by the federal act, Murphy case, supra (346 Mo. 405, 142 S. W. (2d) l. c. 454), but the federal act is undoubtedly the background of practically all of the State Unemployment Compensation Acts. [See Northwestern Mut. Life Ins. Co. v. Tone et al., 125 Conn. 183, 4 Atl. (2d) 640, l. c. 642.] And the federal and state acts together constitute ''a cooperative legislative effort by state and national governments for carrying out a public purpose common to both, which neither could fully achieve without the cooperation of the other.'' [Carmichael et al. v. Southern Coal & Coke Co., 301 U. S. 495, l. c. 526, 57 Sup. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327; Steward Machine Co. v. Davis, 301 U. S. 548, l. c. 587, 57 Sup. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293.]

■ ■ The commission says that our ''unemployment law is remedial in nature and should be liberally construed.'' On the other hand it is contended that the Unemployment Compensation Act includes a *taxing* statute, and that such part should be strictly construed ''against the state in so far as regards the incidence of the tax.'' The question for decision in the Carmichael case, supra, was whether the Unemployment Compensation Act of Alabama infringed the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution. In ruling that case the court said (301 U. S. l. c. 508):

"Taxes, which are but the means of distributing the burden of the cost of government, are commonly levied on property or its use, but they may likewise be laid on the exercise of personal rights and privileges. As has been pointed out by the opinion in the Chas. C. Steward Machine Co. case, such levies, including taxes on the exercise of the right to employ or to be employed, were known in England and the Colonies before the adoption of the Constitution, and must be taken to be embraced within the wide range of choice of subjects of taxation, which was an attribute of the sovereign power of the states at the time of the adoption of the Constitution, and which was reserved to them by that instrument. As the present levy has all the indicia of a tax, and is of a type traditional in the history of Anglo-American legislation, it is within state taxing power, and it is immaterial whether it is called an excise or by another name."

As we see it, there is no escape from the conclusion that the Unemployment Compensation Act includes a taxing statute, and "it is well established that the right of the taxing authority to levy a particular tax must be clearly authorized by the statute, and that all such laws are to be construed strictly against such taxing authority." [State ex rel. Ford Motor Co. v. Gehner et al., 325 Mo. 24, 27 S. W. (2d) 1, l. c. 3, and cases there cited. See also State v. Hallenberg-Wagner Motor Co., 341 Mo. 771, 108 S. W. (2d) 398, l. c. 400; State ex rel. Western Union Telegraph Co. v. Markway, 341 Mo. 976, 110 S. W. (2d) 1118, l. c. 1119; Artophone Corp. v. Coale et al., 345 Mo. 344, 133 S. W. (2d) 343, l. c. 347; State v. Shell Pipe Line Corp., 345 Mo. 1222, 139 S. W. (2d) 510, l. c. 519. See also, Barnes v. Indian Refining Co. (Ky.), 134 S. W. (2d) 620, and Texas Company v. Wheeless (Miss.), 187 So. 880, cited, supra.] In these cases it was held that the Unemployment Compensation Act under consideration was a taxing statute and should, in that respect, be strictly construed.

We advert to the Utah case of Fuller Brush Co. v. Industrial Commission (Utah), 104 Pac. (2d) 201. The facts in that case are stated in the opinion as follows (104 Pac. (2d) l. c. 204):

"Plaintiff is a corporation engaged in the manufacture and sale of brushes. The selling policy of plaintiff is not to sell through brokers, jobbers, and stores, but to enter into written contracts with individuals as dealers, who have a territory assigned to them and in which they effectuate their sales by calling directly at the homes of the people. They were supplied with a sample case of brushes, which was charged or leased to them, and which they could pay for and keep or return for credit upon termination of the contract as dealer. All goods were sold to the dealer for cash and by him resold to purchasers at an advanced price. If a dealer were unable to pay cash he was allowed credit for one weekly order of brushes, provided he first furnished a credit bond or undertaking in the sum of $200 to insure payment. The company suggested retail prices for the

various articles but the dealer was not required to adhere thereto. The dealer set his own hours of work, the order of work, and methods of work. He made no work reports to the company and received no orders or directions from it. He made no reports of sales, furnished the company no list of his customers or record of his accounts with them. Any good will he built up was his own and not the company's. He could sell for cash or credit without knowledge of the company; and upon termination of his contract gave the company nothing except payment for the merchandise he had received.''

The Utah Fuller Brush case was to review a decision of the Industrial Commission holding that one Holst, functioning as a brush dealer as above set out, was an employee or in employment of the Fuller Brush Company under the provisions of the Utah Unemployment Compensation Act. Subsection (j) (1) of the Utah act, Laws of Utah, 1937, p. 94, defined *employment* as follows: '' 'Employment,' subject to the other provisions of this subsection, means service, including service in interstate commerce, ▆▆▆ performed for wages or under any contract of hire, written or oral, express or implied.'' Then follow provisions dealing principally with the *locale* of service and then subdivision (5) (a), (b), (c) of said subsection (j), which subdivision (5) (a), (b), (c) is identical with our subdivision (5) (a), (b), (c) of subsection (i) of Sec. 3, Sec. 9423, R. S. 1939. Subdivision 6 of said section (j) of the Utah statute named several kinds of specific services not to be included under the term *employment* and said subdivision (6) is practically identical, except as to sequence, with our subdivision (6) of said subsection (i).

The Supreme Court of Utah, as appears, supra, held that Holst was not *in the employment* of the Fuller Brush Company within the meaning of the term employment in the Utah act, which is, so far as concerns the statutory definition of employment identical with our act. In ruling the question as to whether the brush dealer was in employment under the Utah act, the Utah Supreme Court said (104 Pac. (2d) 1. c. 202):

''Subhead 6 excludes public service, agricultural service, domestic service and certain other definitely specified types of personal employments. They all constitute personal service normally rendered for wages, or under a contract of hire, and except for the language of subhead 6 would be employment within the act. Subhead 5 excepts from the operation of the act another kind of personal service rendered for wages. It is such service as (a) leaves the individual performing it '. . . free from control or direction over the performance of such services, both under his contract of service and in fact;' and (b) is outside the usual course of the employer's business, or performed outside the place of business of the employer; and (c) is performed by an individual who 'is customarily engaged in an independently established trade, occupation, profession or business.'

But these three factors are not given for the purpose of determining whether a certain labor performed or service rendered, comes within the term 'employment' as used in the act, nor for determining whether such labor or service is performed for 'wages' as used in the act. Subhead 5 applies only to cases, where it has been previously determined, where the work or service comes within the term 'employment' as defined in the act, and that it was performed for 'wages or under a contract of hire.' *Until it has been so determined subhead 5 has no application* (Italics ours). These conditions indicate a legislative intent to make an exception, to eliminate from the operation of the act certain kinds of personal service in private industry rendered for wages, but which could not well be defined by a single work or class designation like those in subdivision 6.''

Then follow, in the Utah case, illustrations where one might render service for another, but would not be in employment under the act. Among the illustrations are the service of a blacksmith in shoeing a horse or sharpening a plow point; the boot black; the automobile mechanic; the dentist; the butcher "who cuts up the deer for the hunter;" the plumber, etc. We think that the Utah construction is sound and we approve it.

We think it is clear that the tests set out in our subsection (5) (a), (b), (c) are usual tests for determining whether or not the relation of independent contractor exists, and that the purpose of placing said subsection in the act was to make plain the basis upon which those in the independent contractor relationship were to be excluded. It is our conclusion, and we so rule that, in the present case, there is no substantial evidence to support the ruling by the commission that claimant Metz was *in the employment* of plaintiff within the meaning of the term *employment* in our Unemployment Compensation Act.

It will not be necessary to rule any other question. The judgment should be reversed and the cause remanded with directions to the trial court to enter judgment consistent with our ruling. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.