**DIMMITT–RICKHOFF–BAYER REAL ESTATE CO. v. FINNEGAN, Collector of Internal Revenue.**

No. 13987.

United States Court of Appeals Eighth Circuit.

Feb. 8, 1950.

Henry C. M. Lamkin, St. Louis, Mo. (Walter L. Roos, and Cobbs, Logan, Armstrong, Teasdale & Roos, St. Louis, Mo., on the brief), for appellant.

Harry Marselli, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott and Clarence J. Nickman, Special Assistants to the Attorney General, Drake Watson, United States Attorney, and William V. O'Donnell, Assistant United States Attorney, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision in this action for the recovery of alleged overpayments of employment taxes for the years 1943 and 1944, assessed under the Internal Revenue Code, Title 26 U.S.C.A. § 1600 et seq., is whether the real estate salesmen of the plaintiff (appellant), a Missouri corporation engaged in the real estate brokerage business in the City and County of St. Louis, Missouri, were its employees within the meaning of § 1607(i) of the Internal Revenue Code as amended by Congressional Joint Resolution 296 of June 14, 1948, retroactive to February 10, 1939, c. 468, 62 Stat. 438, § 1, 26 U.S.C.A. § 1607 (i). Section 1607(i) of Title 26 U.S.C.A., provides:

"§ 1607. *Definitions.*

"When used in this subchapter—

"(i) *Employee.* The term 'employee' includes an officer of a corporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

The plaintiff asserted that to the extent that the employment taxes for the years in suit were based upon the remuneration paid to its salesmen, the taxes were illegal, since the salesmen were not its employees, but were independent contractors. This the defendant (appellee) denied. The case was tried to the court without a jury. There was virtually no dispute as to the evidentiary facts. Two questions were presented to the Court: (1) whether the salesmen were employees of the plaintiff under the evidence and the applicable common-law rules realistically applied; and (2) whether the decision of the Supreme Court of Missouri in the case of A. J. Meyer & Company v. Unemployment Compensation Commission of Missouri, 348 Mo. 147, 152 S.W.2d 184,—holding that, under the usual tests, real estate salesmen of substantially the type here in question were not employees, but were independent contractors not within the coverage of the Missouri Unemployment Compensation Act, Mo.R.S.A. § 9421 et seq.—was determinative of the status of the plaintiff's salesmen. The District Court resolved the issues in favor of the defendant, and entered a judgment of dismissal. This appeal followed.

The usual common-law rule for determining the existence of the relationship

of employer and employee was concisely stated by the Supreme Court of the United States in Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 523, 10 S.Ct. 175, 176, 33 L.Ed. 440, as follows: "* * * And the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.' New Orleans, M. & C. Railroad Co. v. Hanning, 15 Wall. 649, 656 [21 L. Ed. 220]."

The applicable Treasury Regulations, which are an elaboration of the rule (Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715, 717–718), are set out in the margin.[1]

1. Treasury Regulations 107 (C.F.R.Cum. Suppl. [1944], Title 26, Internal Revenue), promulgated under the Federal Unemployment Tax Act.

"SEC. 403.204. *Who are employees.*— Every individual is an employee if the relationship between him and the person for whom he performs services is the legal relationship of employer and employee. (The word 'employer' as used in this section only, notwithstanding the provisions of section 403.201(a), includes a person who employs one or more employees.)

"Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee.

"Generally, physicians, lawyers, dentists, veterinarians, contractors, subcontractors, public stenographers, auctioneers, and others who follow an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.

"Whether the relationship of employer and employee exists will in doubtful cases be determined upon an examination of the particular facts of each case.

"If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such relationship exists, it is of no consequence that the employee is designated as a partner, co-adventurer, agent, or independent contractor.

"The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists.

"No distinction is made between classes or grades of employees. Thus, superintendents, managers, and other superior employees are employees. * * *
* * * * * * *
"SEC. 403.227. *Wages.*— * * *
* * * * * * *
"The name by which the remuneration for employment is designated is immaterial. Thus, salaries, fees, bonuses, and commissions are wages within the meaning of the Act if paid as compensation for employment.

"The basis upon which the remuneration is paid is immaterial in determining whether the remuneration constitutes wages. Thus, it may be paid on the basis of piecework, or a percentage of profits; and it may be paid hourly, daily, weekly, monthly or annually.
* * * * * * *
"SEC. 403.301. *Persons liable for tax.* —Every person who is an employer as defined in section 1607(a) of the Act * * * is liable for the tax. Even if an employer is not subject to any State unemployment compensation law, he is nevertheless liable for the tax. However, if he is subject to such a State law, he may be entitled to certain credits against the tax. * * *."

For the purpose of this opinion it may be conceded that the question of the coverage of the federal taxing act in suit is a matter of federal, and not of state, law, and that the District Court and this Court are not concerned with whether the salesmen were or were not entitled to unemployment compensation under the law of Missouri.

The question, as we see it, is whether the plaintiff, in its contractual arrangement with its salesmen, retained the right to control the manner in which they did business. The contracts were all the same.[2]

2. "This Agreement made this ——— day of ———, by and between Dimmitt Rickhoff Bayer Real Estate Company, Incorporated, Party of the First Part, hereinafter referred to as Broker, and ———, Party of the Second Part, hereinafter referred to as Salesman, for and in consideration of their mutual promises and agreements and for their mutual benefits, Witnesseth:

"Whereas, said Broker is now, and has for many years, been engaged in business as a general real estate broker in the County and City of Saint Louis, Missouri, and is qualified to and does operate a general real estate business and is duly qualified to and does procure the listings of real estate for sale, lease or rental and prospective purchasers, lessees and renters thereof and has and does enjoy the good will of, and a reputation for fair dealing with the public, and,

"Whereas, said broker maintains an office in said County, properly equipped with furnishings and other equipment necessary and incidental to the proper operation of said business, and staffed with employees, suitable to serving the public as a real estate broker, and,

"Whereas, said salesman is now, and has been engaged in business as a real estate salesman, and has enjoyed and does enjoy a good reputation for fair and honest dealing with the public as such, and,

"Whereas, it is deemed to be to the mutual advantage of said Broker and said Salesman to form the association hereinafter agreed to under the terms and conditions hereinafter set out, Therefore:

"1. The Broker agrees to make available to the Salesman all current listings of the office, except such as the Broker may find expedient to place exclusively in the temporary possession of some other Salesman, and agrees to assist the Salesman in his work by advice, instruction, and full cooperation in every way possible.

"2. The Broker agrees that the Salesman may share with other Salesmen all the facilities of the office now operated by said Broker in connection with the subject matter of this contract, which office is now maintained at 1019 Big Bend Boulevard, Richmond Heights, in the County of St. Louis, Missouri.

"3. The Salesman agrees to work diligently and with his best efforts to sell, lease or rent any and all real estate listed with the Broker, to solicit additional listings and customers of said Broker, and otherwise promote the business of serving the public in real estate transactions to the end that each of the parties hereto may derive the greatest profit possible.

"4. The Salesman agrees to conduct his business and regulate his habits, so as to maintain and to increase the good will and reputation of the Broker, and the parties hereto agree to conform to and abide by all laws, rules and regulations, and codes of ethics that are binding upon or applicable to real estate brokers and real estate salesmen.

"5. The usual and customary commissions shall be charged for any service performed hereunder, and the broker shall advise the Salesman of any special contract relating to any particular transaction which he undertakes to handle. When the Salesman shall perform any service hereunder, whereby a commission is earned, said commission shall, when collected, be divided between the Broker and Salesman, in which division the Salesman shall receive a proportionate share as set out in the rider attached headed 'Commission Schedule' and the Broker shall receive the balance. In the event of special arrangements with any client of the Broker or the Salesman on property listed with the Broker or controlled by the Salesman, a special division of commission may apply, such rate of division to be agreed upon by the Broker and the Salesman. In the event that two or more Salesmen participate in such a service, or claim to have done so, the amount of the commission over that accruing to the Broker shall be divided between the participating salesmen according to agreement between them or by arbitration. In no case shall the Broker be personally liable to the Salesman for any commission, nor shall said Salesman be personally liable to said Broker for any commissions, but when the commission shall have been collected from the

While the practical construction placed by the contracting parties upon their arrangement is, no doubt, of importance in ascertaining whether there was a sufficient retention of control by the plaintiff over the operations of the salesmen to make them its employees, we think it is unnecessary to state in minute detail all of the facts which are accorded significance by counsel in their arguments. Our failure to mention them does not mean that they have been overlooked.

The factual situation, as we see it and as it appears to be reflected in the evidence and the findings of the evidentiary facts by the court, is, in substance, as follows: The plaintiff's business consisted primarily of selling the real estate of others upon commission. It had an office with the usual facilities for conducting such a business. In order to sell real estate, it was necessary for the plaintiff to secure listings of properties which were for sale and to find purchasers for them. In order to secure listings and to find purchasers, it needed salesmen to canvass the territory in which it did business. The plaintiff recruited the necessary sales force by entering into a contract with each salesman to make available to him the facilities of its office and its listings of property for sale; to assist him by advice and co-operation; to furnish him with necessary business cards, forms, and stationery; and to divide with him, according to a fixed schedule, any commissions resulting from sales which he procured. The salesman, on his part, agreed to work diligently for the plaintiff. The contract was terminable upon notice. Each salesman purchased the license required of him by State law, and paid the dues for his membership in the local real estate exchange. Each provided his own means of transportation and paid his own

party or parties for whom the service was performed, said Broker, in the event such commissions are paid to him, shall hold the same in trust for said Salesman and himself to be divided according to the terms of this agreement, and in the event such commissions are paid to said Salesman, said Salesman shall pay over to said Broker, said Broker's proportionate share of such commission according to the terms of this agreement.

"6. The division and distribution of the earned commissions as set out in paragraph 5 hereof, which may be paid to or collected by said Broker, shall take place as soon as practicable after collection of such commissions from the party or parties for whom the services may have been performed.

"7. The Broker shall not be liable to the Salesman for any expenses incurred by him, or for any of his acts, nor shall the Salesman be liable to the Broker for office help or expense, and the Salesman shall have no authority to bind the Broker by any promise or representation, unless specifically authorized in a particular transaction; but expenses for attorney's fees, costs, revenue stamps, title abstracts and the like which must, by reason of some necessity, be paid from the commission, or are incurred in the collection of, or the attempt to collect, the commission, shall be paid by the parties in the same proportion as provided for herein in the division of the commissions. Suits for commissions shall, agreeable to the law, be maintained only in the name of the Broker, and the Salesman shall be construed to be a [sugagent] only with respect to the clients and customers for whom services shall be performed, and shall otherwise be deemed to be an independent contractor and not a servant, employee, or partner of the Broker.

"8. This contract, and the association created hereby, may be terminated by either party hereto, at any time upon notice given to the other; but the rights of the parties to any commission which accrued prior to said notice, shall not be divested by the termination of this contract.

"9. The Salesman shall not, after the termination of this contract, use to his own advantage, or the advantage of any other person or corporation, any information gained for or from the files or business of the Broker.

"In Witness Whereof, the parties hereto have signed, or caused to be signed, these presents, this —— day of

Dimmitt Rickhoff Bayer R. E. Co., Inc.,
By:——————
Vice President.
Party of the First Part.

——————
Party of the Second Part."

expenses incurred in the solicitation of business. Most salesmen had automobiles, but were not required to have them. Those who had automobiles paid the expenses of their operation and upkeep and for the liability insurance upon them. The policies of liability insurance procured by the salesmen usually contained a rider for the protection of the plaintiff. The salesmen ordinarily reported at plaintiff's office daily, but that was not compulsory. They generally attended the salesmen's meetings held weekly at the office, but their attendance was not mandatory. They took turns at keeping the office open on Saturday afternoons and Sundays, for their own benefit as well as that of the plaintiff. They were not required to keep fixed hours. Some worked full time and some part time. Some of them were housewives and some had businesses other than selling real estate. They were not permitted to sell real estate for other brokers nor to make sales in their own names and on their own behalf. The salesmen sometimes prepared advertisements which, if approved, were published at the plaintiff's expense. The plaintiff furnished "For Sale" signs to the salesmen. Two of the most experienced of the salesmen were designated as "Sales Managers" and assisted the others with advice and suggestions and received an overriding commission on sales. Each salesman was furnished a manual or booklet explaining the plaintiff's business policies in great detail. It is too long to be included in this opinion. Whether the booklet be regarded as the rules and regulations of the plaintiff, as the defendant claims, or as a statement of business policies and helpful suggestions, as the plaintiff asserts, we do not regard as of controlling importance. The booklet reasonably may be regarded as the plaintiff's instructions for the guidance of the salesmen, with which they were expected to, and did, comply in conducting business. The stationery, business forms, and "For Sale" signs furnished the salesmen bore the plaintiff's name. The plaintiff attended to the closing of all sales procured by the agents. Commissions on sales were paid to the plaintiff and were divided once a month among the salesmen who had

earned them. Some salesmen received a bonus. The salesmen had no expense accounts, but occasionally the plaintiff would advance money to a salesman against his commissions earned or to be earned. A salesman selling his own property was required to pay a commission to the plaintiff. There is no evidence that any such sales were made.

The Supreme Court of Missouri has been of the opinion that, under the usual tests for determining the employer-employee relationship, salesmen such as those here involved are not the employees of their principal, but are independent contractors. A. J. Meyer & Company v. Unemployment Compensation Commission of Missouri, supra, 348 Mo. 147, 152 S.W.2d 184. See, also, and compare, Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S.W.2d 58; Snowwhite v. Metropolitan Life Ins. Co., 344 Mo. 705, 127 S.W.2d 718; Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S.W.2d 252, 116 A.L.R. 1381. The Circuit Court of Appeals of the Ninth Circuit, in the case of Henry Broderick, Inc. v. Squire, 163 F.2d 980, reached the same conclusion with respect to real estate brokers whose relation to their principal, we think, differed in no controlling respect from the relation of the salesmen in the instant case to the plaintiff. See, also, Brown v. Luster, 9 Cir., 165 F.2d 181, 184–185. It seems probable to us that the Court of Appeals of the Second Circuit would hold that such salesmen were not the employees of their principal, under the applicable common-law tests. Compare, Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715, supra; McGowan v. Lazeroff, 2 Cir., 148 F.2d 512.

An analysis of the opinion of the Supreme Court in the cases of United States v. Silk, and Harrison v. Greyvan Lines, Inc., 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, indicates to our minds that a ruling that the plaintiff in the instant case, under its arrangement with its salesmen, had retained the right to control the manner in which they were to accomplish results, is not justified by the evidence. We think that Greyvan Lines, Inc., as shown by the opinion of the Supreme Court, had and

exercised far more control over the manner in which its truck operators, who were held to be independent contractors, did business than the plaintiff in the instant case had over the activities of its salesmen in soliciting listings and finding purchasers. We note that the truckers for Greyvan were furnished with a manual of rules and regulations, but that that was not considered a controlling factor in the Greyvan case. The decision of this Court in United States v. Kane, 8 Cir., 171 F.2d 54, is readily distinguishable from the instant case. There we were dealing with the employment of common laborers who delivered coal in wheelbarrows. Their situation was fairly comparable with that of the coal unloaders in the Silk case. Here we are concerned with competent salesmen, almost entirely dependent upon their own initiative, efforts, skill, and personality for success, working upon their own time, at their own expense, and deriving their remuneration from the results of their work.

If the regulations proposed by the Bureau of Internal Revenue of the Treasury Department which are published in the Federal Register of November 27, 1947, 12 F.R. 7966, had become effective, the applicable law might have been different. Under "Factors to be considered," the proposed regulation provided in part as follows: " * * * an employee is an individual in a service relationship who is dependent, as a matter of economic reality, upon the business to which he renders service and not upon his own business as an independent contractor. * * *"

■ Congress, by its Joint Resolution of June 14, 1948, repudiated the expansion of the common-law rule proposed by the Treasury Department for determining the existence of the relationship of employer and employee. This was done by adding to § 1607(i) of the Internal Revenue Code, the words: "but such term [employee] does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules." A reading of the reports of the Congressional Committees accompanying the Joint Resolution, U.S.Code Congressional Service, Vol. 2, 80th Congress, Second Session, 1948, page 1752 et seq., makes it clear that the coverage of the statute in suit is not to be expanded by Treasury Regulations or court decisions relaxing or changing the common-law concept of the employer-employee relationship.

■ It is our conclusion that the salesmen of the plaintiff were not its employees within the meaning of § 1607(i) of the Internal Revenue Code, as amended, and that their remuneration was not subject to employment taxes during the years in suit.

The judgment appealed from is reversed, and the case is remanded with directions to enter judgment for the plaintiff.