## Commonwealth ex rel. Division of Unemployment Insurance v. Kendall.

October 24, 1950.

W. B. Ardery, Judge.

Elwood Rosenbaum, Maurice H. Harris and Samuel H. Cole for appellant.

Hensley & Logan for appellee.

JUDGE HELM—Affirming.

Appellee, Paul Kendall, is a real estate broker in Louisville, selling real estate in that city under the firm name of The Kendall Company. Appellee contracts with salesmen to sell real estate out of his office in the name of his company. Appellee and the salesmen worked under a Real Estate Broker-Salesman contract as follows:

"This Agreement by and between ———, hereinafter referred to as 'broker,' and ———, hereinafter referred to as 'salesman,' for and in consideration of their mutual promises and for their mutual benefits, Witnesseth:

"That, Whereas, the broker is duly registered as a real estate broker, and is duly qualified to, and does, procure the listing of real estate for sale, lease or rental, and prospective purchasers, lessees and renters therefor, * * * and * * * has and maintains an office, properly equipped with furnishings, and staffed

by employees, suitable to serving the public as a real estate broker, and

"Whereas, the salesman is a duly registered real estate salesman and properly qualified to deal with the public as such, and

"Whereas, it is deemed to be the mutual advantage of the broker and salesman to form the association hereinafter agreed to, Therefore

"1. The broker agrees to make available to the salesman all current listings of the office, * * * and agrees to assist the salesman in his work by advice, instruction, and full cooperation in every way possible.
"2. * * *

"3. The salesman agrees to work diligently and with his best efforts to sell, lease or rent any and all real estate listed with the broker, to solicit additional listings and customers for said broker, * * * to the end that each of the parties hereto may derive the greatest profit possible.

"4. The salesman agrees to conduct his business and regulate his habits so as to maintain and to increase, rather than diminish, the good will and reputation of the broker, and the parties hereto agree to conform to and abide by all laws, rules and regulations and codes of ethics that are binding upon, or applicable to, real estate brokers and salesmen.

"5. The usual and customary commissions shall be charged for any service performed hereunder, * * *. When the salesman shall perform any service hereunder, whereby a commission is earned, said commission, shall, when collected, be divided between the broker and salesman, in which division the salesman shall receive—per cent and the broker shall receive the balance. * * * In no case shall the broker be liable to the salesman for any commission unless the same shall have been collected from the party for whom the service was performed.

"6. The broker shall not be liable to the salesman for any expenses incurred by him, or for any of his acts, nor shall the salesman be liable to the broker for office help or expense, and the salesman shall have no authority to bind the broker by any promise or repre-

sentation, unless specifically authorized in a particular transaction; * * *. Suits for commissions shall, agreeable to the law, be maintained only in the name of the broker, and the salesman shall be construed to be a sub-agent only with respect to the clients and customers for whom services shall be performed, and shall otherwise be deemed to be an independent contractor and not a servant, employee, joint adventuror or partner of the broker.

"7. This contract, and the association created hereby, may be terminated by either party hereto, at any time upon notice given to the other; * * *.

"8. * * *.

"In Witness Whereof * * *.

"_____
                                           Broker
"_____"
                                        Salesman

This declaratory judgment action was filed in the Franklin Circuit Court by appellant, asking that the Court determine and declare the liability of appellee for unemployment compensation contributions on the commissions received by his salesmen. Appellee's answer admitted the material allegations of the petition, but denied any liability for the payment of unemployment compensation contributions to appellant on commissions received by his real estate salesmen, and joined with the plaintiff in requesting that the Court determine and declare the rights of the parties.

The trial Court adjudged that the real estate salesmen of appellee "are independent contractors," and that appellee "is not liable for the tax or unemployment compensation contributions on commissions paid its salesmen * * * under Chapter 341 * * * Kentucky Revised Statutes."

KRS 341.270 provides that contributions shall be paid by each "subject employer." KRS 341.070, in effect, describes a subject employer as one who has workers in covered employment. KRS 341.050 provides: "(1) As used in this chapter, * * * 'covered employment' means service, * * performed for wages or under any contract of hire, written or oral,

express or implied in which the relationship of the individual performing such service and the employing unit for which such services are rendered is, as to those services, the legal relationship of employer and employe."

The question presented is whether or not the legal relationship of employer and employee existed between appellee and the salesmen.

In Guaranty Mortgage Co. of Nashville v. Bryant, 179 Tenn. 579, 168 S.W.2d 182, 184, a contract similar to the one here was before the Supreme Court of Tennessee. That Court held that salesmen under such a contract did not perform services for the broker for "wages or under a contract of hire" within the Unemployment Compensation Act definition of employment. The Court said: "* * * Commissions were not paid by complainant, but by the parties to the sale. Complainant did not pay, or promise to pay, any wages or commissions to the salesmen. The situation was that the salesmen paid one-half of commissions earned by them to complainant, rather than that complainant was paying them commissions."

In the Missouri case of A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S.W.2d 184, a case similar to the instant case, the Supreme Court of Missouri pointed out that the Federal Act is the background of practically all State Unemployment Compensation Acts, and that the Federal and State Acts together constitute a cooperative effort. In that case, under an agreement similar to the one here, that Court held that salesmen were not in the broker's employment within the terms of their Unemployment Compensation Act.

In G. W. Allen & Co. v. Henslee, 86 F. Supp. 295, the United States District Court had under consideration a broker-salesman contract practically identical with the contract here. The Court held that real estate salesmen under such a contract who were not subject to control over method in which work was carried out, were not employees within the meaning of the Federal Unemployment Tax Act, 26 U.S.C.A. sec. 1600 et seq.

In Dimmitt-Rickhoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 179 F.2d 882, the broker-salesman's

contract, which is set out in full, is very similar to the contract here. The Circuit Court of Appeals, Eighth Circuit, held that the salesmen there were not employees of the broker so as to make the remuneration of salesmen subject to Federal employment taxes. A. J. Meyer & Co. v. Unemployment Compensation Commission, supra, was cited with approval.

In Commonwealth ex rel. Unemployment Compensation Commission v. Kaufman Straus Co., 300 Ky. 1, .187 S.W.2d 821, 824, we said: "This decision is fortified by the fact that the Unemployment Compensation Act was passed for the express purpose of conforming to the Federal Social Security Act (42 U.S.C.A. sec. 301 et seq.) under which the Federal excise tax was levied. A great injustice would result to the taxpayer from a conflict between the Federal and State agencies in the construction of contracts similar to the one involved in this case, * * *."

In our opinion the relationship here shown is of the same nature as that appearing in the foregoing cases.

In 56 C.J.S., Master and Servant, sec. 2, p. 33, it is said: "The essential characteristic of the master and servant relation is the retention by the employer of the right to direct and control the manner in which the work shall be performed, the right to determine not merely the result but the methods and means by which such result is to be accomplished."

Here it is admitted by the pleadings that the contract is terminable at the will of either party. Salesmen agree to and do pay all their selling expenses; they own their own cars and maintain them at their own expense, and pay all entertainment or other expenses incidental to obtaining customers. Salesmen do not make any periodic reports; do not go through any prescribed training period or course; have no regular schedule, office or working hours; are not required to produce any minimum value of sales; work only such hours as they please, take such vacations and holidays as they see fit; may engage in other business; the broker does not direct the salesman to call on any particular prospect, or to concentrate upon the sale of any particular property; the commission received from a

sale is divided, 60 per cent to the salesman, 40 per cent to the broker; salesmen are compensated solely by commission. Here it appears the salesman is responsible to the broker for results, but except to the extent that results may influence the method of operation, the broker does not control the details of the salesman's operation.

Viewed in the light of the facts of the record, the legal relationship of employer and employee did not exist between the broker and the salesman. Therefore, unemployment compensation contributions should not be required.

The judgment is affirmed.