STATE of Missouri, Ex Inf. Eric G. Zahnd, Prosecuting Attorney, Platte County, Missouri, Respondent,

v.

Rita A. RHOADS, Appellant.

No. WD 75538.

Missouri Court of Appeals, Western District.

June 4, 2013.

Keith Hicklin, Platte City, MO, for Appellant.

Joseph Vanover, Platte City, MO, for Respondent.

Before JAMES EDWARD WELSH, C.J., VICTOR C. HOWARD, J., and MICHAEL MANNERS, Sp. J.

JAMES EDWARD WELSH, Chief Judge.

Rita A. Rhoads appeals the circuit court's judgment in quo warranto ousting her as Mayor of Tracy, Missouri, for hiring her son-in-law to repair a city sign. The circuit court determined that Rhoads violated article VII, section 6 of the Missouri

Constitution, which states that a public officer forfeits her office if she appoints to "employment any relative within the fourth degree, by consanguinity or affinity[.]" Rhoads contends that, because her son-in-law was an independent contractor, she did not appoint him to employment as that term is used in article VII, section 6 of the Missouri Constitution. We disagree and affirm the circuit court's judgment.

The evidence established that, in the spring of 2012, a wooden "City of Tracy" sign was damaged. Rhoads, acting in her capacity as Mayor of Tracy, hired her son-in-law, Matthew D. Spores, to repair the sign and agreed to pay her son-in-law $100. Rhoads made out a check payable to her son-in-law and signed a check in the amount of $100 from the general fund account of the City of Tracy.

The State of Missouri, through Eric G. Zahnd, Prosecuting Attorney for Platte County, filed a Petition in Quo Warranto on July 9, 2012, under Chapter 531, RSMo, and Rule 98 of the Missouri Rules of Civil Procedure to oust Rhoads from office. The State alleged that Rhoads violated her official duties by hiring her son-in-law to perform work for the City of Tracy in violation of the nepotism clause found in article VII, section 6 of the Missouri Constitution, and therefore, requested that Rhoads be removed from her office as Mayor of Tracy.

After a trial, the circuit court found that Rhoads's son-in-law was a relative within the fourth degree by affinity and that Rhoads, in her capacity as a public officer, appointed her son-in-law to employment with the City of Tracy. The circuit court concluded that Rhoads usurped the power of her public office and violated Mo. Const. art. VII, sec. 6. Therefore, the circuit court ordered Rhoads to be immediately removed from the office of Mayor of the City of Tracy. Rhoads appeals.

Review of this court tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *State ex inf. McCulloch v. Edwards*, 337 S.W.3d 118, 121 (Mo.App.2011). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We view the evidence and inferences in the light most favorable to the circuit court's judgment and disregard all contrary evidence and inferences. *Id.* "We will only set aside the judgment upon a firm belief that the judgment is wrong." *Id.*

"Quo warranto is an appropriate remedy for enforcing a forfeiture resulting from violation of the Missouri constitutional ban on nepotism." *Dryer v. Klinghammer*, 832 S.W.2d 3, 4 (Mo.App.1992) (*citing State ex inf. Roberts v. Buckley*, 533 S.W.2d 551, 553 (Mo. banc 1976)). Article VII, section 6 of the Missouri Constitution provides: "Any public officer or employee in this state who by virtue of his office or employment names or appoints to public office or employment any relative within the fourth degree, by consanguinity or affinity, shall thereby forfeit his office or employment." The only issue in this case is whether or not Rhoads's appointment of her son-in-law to repair a city sign constitutes employment within the meaning of article VII, section 6 of the Missouri Constitution. Rhoads contends that, because her son-in-law was acting as an independent contractor, she did not appoint her son-in-law to "employment" with the City of Tracy. We disagree.

" 'Constitutional provisions are subject to the same rules of construction as other laws, except that constitutional provisions are given a broader construction due to their more permanent charac-

ter.'" *Am. Fed'n of Teachers v. Ledbetter,* 387 S.W.3d 360, 363 (Mo. banc 2012) (citation omitted). "In determining the meaning of a constitutional provision[,] the court must first undertake to ascribe to the words the meaning which the people understood them to have when the provision was adopted." *Boone Cnty. Ct. v. State,* 631 S.W.2d 321, 324 (Mo. banc 1982), *superseded in part by constitutional amendment as recognized in Mo. Prosecuting Attys. v. Barton Cnty.,* 311 S.W.3d 737, 741 (Mo. banc 2010). In ascertaining the meaning of the word "employment," "the primary rule is to 'give effect to the intent of the voters who adopted the [provision]' by considering the plain and ordinary meaning of the word." *Johnson v. State,* 366 S.W.3d 11, 25 (Mo. banc 2012) (citations omitted). "The ordinary, usual and commonly understood meaning is, in turn, derived from the dictionary." *Boone Cnty.,* 631 S.W.2d at 324.

At trial, the State admitted into evidence a copy of page 839 of Webster's New International Dictionary (2nd ed.1934, New Words Section 1939, 1945), which defines "employment" and employ." The definitions in this version of the dictionary would supply the "ordinary, usual, and commonly understood meaning" of the words, which the people would have ascribed to the terms when Mo. Const. art. VII, sec. 6, was adopted in 1945. The pertinent definitions of "employment" from the dictionary as used in 1945 are: "1. . . . . state of being employed; as, to seek *employment.* 2. That which engages or occupies; that which consumes time or attention; also, an occupation, profession, or trade; service. . . . 3. **a** Use; purpose. **b**

(One's) service. **c** Implement." Webster's New Int'l Dictionary 839 (emphasis in the original). Because the first pertinent definition of "employment" uses the term "employed," the definition of "employ" also becomes relevant. The pertinent definition of "employ" from the dictionary as used in 1945 is: "To make use of the services of; to give employment to; to entrust with some duty or behest; as, to *employ* an envoy; often, in the passive, to have employment; to be at work; as, he has been *employed* for some time." *Id.* (emphasis in the original).

■ In this case, Rhoads, in her capacity as Mayor of Tracy, made use of her son-in-law's services to repair a damaged city sign and entrusted her son-in-law with the duty to fix the sign. The act of repairing the sign consumed her son-in-law's time and attention. While working on the project, Rhoads's son-in-law was in the state of being employed by the City of Tracy, and the work of repairing the sign engaged and occupied him, even if only temporarily. Under the plain and ordinary meaning of the word "employment," Rhoads's asking her son-in-law to repair the sign and the son-in-law's act of repairing the sign for the City of Tracy constituted employment.[1]

■ To the extent that Rhoads claims that her son-in-law was not appointed to employment with the City of Tracy because her son-in-law was acting as an independent contractor, we are not persuaded. Rhoads argues that we should delve into the twenty-factor test set forth in I.R.S. Revenue Ruling 87–41 to determine

---

1. We note that the Constitution does not even make an exception for a public official who appoints a relative to employment and the relative receives no pay for the service. *See State ex inf. Atty. Gen. v. Shull,* 887 S.W.2d 397, 400 (Mo. banc 1994), *abrogated on other grounds by State v. Olvera,* 969 S.W.2d 715 (Mo. banc 1998). "[T]he constitution makes the appointment of any relative within the prohibited relationship the basis for a forfeiture of office." *Shull,* 887 S.W.2d at 400.

whether an employment or independent contractor relationship existed. "[T]he construction of constitutional provisions," however, "is not to be a hyper-technical process." *Pearson v. Koster*, 367 S.W.3d 36, 48 (Mo. banc 2012). The meaning of "employment" as understood at the time that Mo. Const. art. VII, sec.6, was adopted in 1945 did not include the twenty-factor test promulgated by the Internal Revenue Service in 1987 in I.R.S. Revenue Ruling 87–41.

As previously noted, to determine the meaning of the term "employment" as used in Mo. Const. art. VII, sec. 6, we "must undertake to ascribe to the words the meaning which the people understood them to have when the provision was adopted." *Boone Cnty. Ct.*, 631 S.W.2d at 324. "Employment" as commonly understood at the time that Mo. Const. art. VII, sec. 6, was adopted would include work done for a public body pursuant to a contract or work given to independent contractors. Indeed, in *A.J. Meyer & Co. v. Unemployment Comp. Comm'n*, 348 Mo. 147, 152 S.W.2d 184 (1941), the Missouri Supreme Court was called upon to decide if an independent contractor was entitled to unemployment compensation. The Court concluded that independent contractors were specifically excluded from coverage by the unemployment compensation statutes. *Id.* at 192. Specifically, the Su-

preme Court found that no substantial evidence existed to support the ruling by the commission that the claimant "was in the employment of plaintiff within the meaning of the term employment in our unemployment compensation act."[2] *Id.* (emphasis omitted). In other words, because the plain and ordinary meaning of "employment" included work done by independent contractors as well as work performed in an employer-employee relationship, the legislature felt compelled to explicitly exclude independent contractors from the statutory scheme for unemployment compensation. If "employment" in 1945 was already commonly understood to exclude the work performed by independent contractors, then there would have been no need for the legislature to retain a statute excluding independent contractors from the unemployment compensation law.

Given that we give constitutional provisions a broader construction due to their more permanent character, *Am. Fed'n of Teachers*, 387 S.W.3d at 363, we conclude that the work of an independent contractor falls within the definition of "employment" as that term is used in Mo. Const. art. VII, sec. 6. The circuit court, therefore, did not err when it determined that Rhoads, acting as Mayor of Tracy, violated article VII, section 6 of the Missouri Constitution, when she appointed to employment her

---

**2.** Specifically, the pertinent statute in *A.J. Meyer* defined "employment" as: " 'Subject to the other provisions of this subsection, employment means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied.' " 152 S.W.2d at 186 (quoting § 9423(3)(i)(1), RSMo 1939). The statute then made this exclusion:

"Services performed by an individual for wages shall be deemed to be employment subject to this law [Act] unless and until it is shown to the satisfaction of the commission that (a) such individual has been and will continue to be free from control or

direction over the performance of such services, both under his contract of service and in fact; and (b) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) such individual is customarily engaged in an independently established trade, occupation, profession or business."

*A.J. Meyer*, 152 S.W.2d at 186 (quoting § 9423(3)(i)(5), RSMo 1939) (emphasis omitted).

son-in-law, who was a relative within the fourth degree, by affinity. Thus, we affirm the circuit court's judgment in quo warranto ousting Rhoads as Mayor of Tracy for hiring her son-in-law to repair a city sign.

All concur.